**Electronically Filed
Supreme Court
SCWC-13-0000069
17-JUN-2015
09:09 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

IKAIKA REED,
Petitioner/Defendant-Appellant.

_____

SCWC-13-0000069

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0000069; CR. NO. 12-1-0899)

JUNE 17, 2015

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY WILSON, J.

The sole issue raised in Petitioner Ikaika Reed's application for writ of certiorari is whether the Intermediate Court of Appeals (ICA) gravely erred in holding that the trial court did not abuse its discretion when it denied Reed's motion

to substitute retained counsel in place of his court-appointed counsel. We agree with Reed that the circuit court abused its discretion, resulting in a denial of his right to privately retained counsel of choice under article 1, section 14 of the Hawai'i Constitution. Accordingly, we vacate the ICA's June 9, 2014 judgment on appeal affirming the Circuit Court of the First Circuit's (circuit court)[1] judgment of conviction and sentence for assault in the first degree.

## I. Background

Reed was arraigned on June 21, 2012 for the charge of assault in the first degree[2] in violation of Hawai'i Revised Statutes (HRS) § 707-710.[3] At that time he was assigned the trial week of August 20, 2012.[4] If convicted, Reed faced a ten-

---

[1]    The Honorable Dexter D. Del Rosario presided.

[2]    The allegations against Reed stemmed from an incident that occurred at Waianae Boat Harbor. In the early morning of June 10, 2012, Alvin Kalahiki and a few of his family members and friends were "talking story" at the boat harbor following a fundraiser they attended at a bar nearby. Kalahiki testified that while at the boat harbor, he and Reed were involved in an altercation, wherein Reed punched him in the face while holding a knife. Kalahiki suffered a laceration that extended from "the tip of his ear to the tip of his nose."

[3]    HRS § 707-710 (2014) provides, as it did at the time of the offense:

> (1) A person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person.
>
> (2) Assault in the first degree is a class B felony.

[4]    Following the arraignment, the State filed a notice of eligibility for sentencing pursuant to HRS §§ 706-661 and 706-662(1). Under

(continued. . .)

2

year sentence with a possible mandatory minimum of three years and four months without the possibility of parole, based on his potential status as a repeat offender.[5]  The Office of the Public Defender was appointed as his counsel on July 5, 2012.

Twenty-seven days later, on August 1, 2012, Reed's deputy public defender (DPD) orally made his first motion to continue trial because he had not yet received a recording of the grand jury proceedings.  The State did not object and informed the court that it had not yet provided Reed with all discovery.  The circuit court granted the continuance and set trial for October 1, 2012.

On September 25, 2012 — approximately ninety days after his arraignment—Reed filed a second motion to continue.  The DPD's declaration filed along with the motion stated that the death of one of Reed's percipient witnesses, the State's recent disclosure of three witnesses and release of additional

_____

(. . . continued)
these statutes, based on Reed's previous convictions, he could be subject to a twenty-year term of imprisonment.  See HRS §§ 706-661(3), 706-662(1) (2014).  The State did not pursue such an extended sentence following Reed's conviction.

[5]     Class B felonies, such as assault in the first degree, are subject to a maximum indeterminate sentence of ten years imprisonment.  HRS § 706-660(1)(a) (2014).  Pursuant to HRS § 706-606.5(1)-(2) (2014), individuals convicted of Class B felonies, who have certain previous felony convictions within the relevant time period, will be subject to mandatory minimum periods of imprisonment without the possibility of parole.  Here, Reed had a previous conviction that qualified him for "a mandatory minimum period of imprisonment without possibility of parole" of three years and four months.  HRS § 706-606.5(1)(a)(iii).

statements from the complaining witness, and the need to interview recently discovered defense witnesses required a continuance.[6]

The next day, at the September 26, 2012 trial call, the circuit court inquired as to the State's position on Reed's request for a continuance. The State informed the court that it was ready for trial, noted that the DPD's declaration was accurate, and made no objection to Reed's second motion to continue. The circuit court proceeded to ask the parties about Reed's terroristic threatening case, which was also before the court.[7] Ultimately, the court granted Reed's second motion to

---

[6] Specifically, the declaration stated in relevant part:

> b.   On September 19, 2012, I learned that one of the defense's percipient witnesses . . . was murdered the week before;
>
> c.   On September 20, 2012, the State provided notice and contact information for at least two (2) additional witnesses. At that time, the State also disclosed additional statements from the complaining witnesses [sic] that were not previously known and that contradict his prior statements;
>
> d.   On September 24, 2012, the State provided contact information for a third new witness;
>
> e.   I recently received information for additional defense witnesses that I have not had the opportunity to confirm or disclose to the State;
>
> f.   I need additional time to investigate this case, to obtain additional evidence, and to locate and interview witnesses[.]

[7] The record indicates that Reed was represented by private counsel in the terroristic threatening case.

4

continue and reset the trial for October 15, 2012 with a trial call on October 10, 2012. The court stated that the first degree assault case would function as the "prime case" and the terroristic threatening case as the "backup" case, noting that if the assault case were continued, the court would proceed on the terroristic threatening case.

Two weeks later, at the trial call on October 10, 2012, the DPD notified the court that Reed was "in the process of potentially retaining other counsel." On this basis and the declaration that Reed was "still in the process of obtaining witness information," including contacting a potential percipient witness, the DPD requested a third continuance with no objection from the State.[8] The court did not address the DPD's statement regarding Reed's intent to substitute counsel. It denied the third motion to continue, after concluding sufficient time had transpired for identification and preparation of defense witnesses:

> THE COURT: In exercising the [c]ourt's discretion on whether to grant the continuance on the eve of trial, the [c]ourt will follow the criteria that the Supreme Court had made out in State v. Reid.[9] First of all, as a matter of policy, continuance [ ] made on the eve of trial is viewed with disfavor, and when it's done on the basis for absence of witnesses, the [c]ourt must make a determination as to who is this witness, the substance of their testimony, whether a diligent effort was made to secure the attendance

---

[8] The circuit court did not inquire as to the State's position on the continuance prior to making its ruling.

[9] It is unclear which case the circuit court was referring to.

5

> of this witness, the likelihood of the availability of this witness in the future. And based on the record before this court it is speculative at this point what that witness would have, so the continuance is denied. I should note that this case has been continued from -- twice already, and this would be a third continuance. So the [c]ourt believes that there's been sufficient time to inform these witnesses. The motion is denied . . . .

At the same hearing, the court addressed Reed's previously-filed motion to continue his terroristic threatening case. The court granted the motion to continue the terroristic threatening case and reset the trial for February 19, 2013.

Five days later, on the day of trial and prior to jury selection, Reed appeared with retained counsel and renewed his request for a trial continuance. The DPD moved to withdraw as trial counsel, stating that Reed retained private attorney Clayton Kimoto to represent him. Again, the court did not inquire as to the State's position on Reed's motion, and the State made no objection. The circuit court appeared to be about to deny Reed's request for substitution of his privately retained counsel when Reed addressed the court. He explained to the court that he lost confidence in his attorney because the DPD did not engage in timely preparation of defense witnesses, did not return phone calls regarding witnesses, and failed to timely inform Reed of the State's disclosure of additional witnesses before trial. On this basis, Reed asked the court to permit his retained counsel to represent him so that he could receive a fair trial:

6

THE COURT: Should I grant this motion, will new counsel be ready to pick a jury this morning and to proceed to trial?

MR. KIMOTO: May I speak, Your Honor?

THE COURT: Yes, you may.

MR. KIMOTO: Thank you.

THE COURT: And could you just state your name for the record.

MR. KIMOTO: Oh, yes. Clayton Kimoto, Your Honor. [Reed] was in conversation with me, and I told him that I'd represent him, but it was contingent of course upon the [c]ourt granting a continuance. I am not ready to proceed to trial at this time, Your Honor, because I have not had a chance to interview him.
I believe just in my conversation with [Reed], there are a number of witnesses that he intends to call for his case, and I have not had a chance to interview any of them.

THE COURT: When were you contacted?

MR. KIMOTO: I was first contacted -- pardon me, Your Honor, if I may look at my notes. It was sometime last week, Your Honor, it was just before -- the day before last week's trial call, Your Honor.

THE COURT: Okay, the [c]ourt is prepared to rule. This issue has [] already been addressed by the appellate court. I believe there's a case in which under identical circumstances the defendant had sought to replace counsel on the eve of trial, and the [c]ourt --

[DPD]: I'm sorry for interrupting, Your Honor. I believe that [Reed] did want to speak to the [c]ourt as well, if the [c]ourt wants to entertain [Reed].

[REED]: The reason for my withdrawing my counsel is because the first time we went continue the case, he was on vacation, he couldn't talk to my witnesses, nothing. So he went continue that one, and the next one he went continue'em, he end up calling my witnesses two days before trial call just last week.
And I told him that I have like ten more witnesses, and he no even call. I call his phone, everything, he no return my call, then he return'em like what, five days later. He get -- he has three more witnesses -- them have three more witnesses. He contacted him, he didn't even tell me they had three more witnesses. Just like he's misrepresenting me all this time. That's how I feel, that's why I like withdraw. All I ask is for one fair trial, Your Honor.

7

The DPD did not respond to Reed's allegations:

> THE COURT: [DPD], do you wish to respond?
>
> . . . .
>
> [DPD]: Given that there is no ethics complaint, I don't believe that there's an appropriate forum in which to address attorney/client communications, Judge.

Notwithstanding the lack of response to Reed's complaints regarding his counsel and without asking the State its position on the motion, the court found Reed's request "dilatory," denied Reed's motion for withdrawal and substitution, and elected to proceed with trial:

> THE COURT: Again, I'm not going to -- well, the case I was talking about, let me address the first issue regarding whether new counsel is ready to proceed. The appellate court's already addressed that issue, and they've left it in the discretion of the [c]ourt, and [the] [c]ourt looks with disfavor on the replacement of counsel and motion to withdraw on the eve of trial, as it may be at times and I think in this case it can be considered as a dilatory tactic.
> However, the courts have allowed withdrawal when new counsel is ready to proceed to trial; however, that's not the case here. And I had indicated on more than one occasion that the [c]ourt wanted to start this case. Because [Reed] has several cases, the [c]ourt wanted to start trying these cases, so the record was clear and it's clear to all the parties that the [c]ourt was going to proceed with these cases, so I'm going to deny the motion to withdraw as counsel.
> We have a jury ready to proceed, we'll take a recess and bring in the jury. The [c]ourt will stand in recess.

Following a short recess, the parties conducted voir dire and a jury was impaneled. That afternoon, the State called its first two witnesses. After the second trial day, the jury found Reed guilty of assault in the first degree. The circuit court sentenced Reed to ten years in prison with a mandatory

8

minimum of three years and four months without the possibility of parole.  See supra note 5.

Reed appealed the judgment of conviction and sentence to the ICA, contending the circuit court abused its discretion in denying his motion for withdrawal and substitution of counsel.  The ICA held that there were "factors supporting as well as weighing against Reed's request," and noted that it could not "conclude that the [c]ircuit [c]ourt's assessment that Reed's request was made for dilatory purposes was clearly wrong."  State v. Reed, No. CAAP-13-0000069, 2014 WL 1658569, at *5 (App. Apr. 25, 2014) (mem. op.).  The ICA therefore affirmed the judgment of conviction and sentence.  Id.

## II.  Discussion

Reed contends that the circuit court abused its discretion in denying his motion for withdrawal and substitution of counsel.  As explained below, we agree and conclude that Reed was denied his right to privately retained counsel of choice under the Hawai'i Constitution.

In State v. Maddagan, we recognized that the right to counsel provided by the sixth amendment to the United States Constitution and article 1, section 14 of the Hawai'i Constitution "encompasses a right to privately retained counsel of choice."  95 Hawai'i 177, 179-80, 19 P.3d 1289, 1291-92

9

(2001).[10] The right to retained counsel of choice is among those constitutional rights deemed of such importance that deprivation of the right is recognized as amounting to structural error. See State v. Cramer, 129 Hawai'i 296, 303, 299 P.3d 756, 763 (2013) (citing United States v. Gonzalez-Lopez, 548 U.S. 140, 150 (2006)). A structural error "affect[s] the framework within which the trial proceeds" as opposed to "an error in the trial process itself." State v. Ortiz, 91 Hawai'i 181, 193, 981 P.2d 1127, 1139 (1999) (quoting Arizona v. Fulminate, 499 U.S. 279, 310 (1991)) (internal quotation mark omitted).[11] Accordingly,

---

[10] The sixth amendment of the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the [a]ssistance of [c]ounsel for his defen[s]e." Similarly, article 1, section 14 of the Hawai'i Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for the accused's defense."

[11] In Gonzalez-Lopez, the United States Supreme Court also quoted from Arizona v. Fulminate to explain structural errors as follows:

> The second class of constitutional error we called "structural defects." These "defy analysis by 'harmless-error' standards" because they "affec[t] the framework within which the trial proceeds," and are not "simply an error in the trial process itself." [Fulminate, 499 U.S. at 309-10.] See also Neder v. United States, 527 U.S. 1, 7-9 (1999). Such errors include the denial of counsel, see Gideon v. Wainwright, 372 U.S. 335 (1963), the denial of the right of self-representation, see McKaskle v. Wiggins, 465 U.S. 168, 177-178, n.8 (1984), the denial of the right to public trial, see Waller v. Georgia, 467 U.S. 39, 49, n.9 (1984), and the denial of the right to trial by jury by the giving of a defective reasonable-doubt instruction, see Sullivan v. Louisiana, 508 U.S. 275 (1993).

548 U.S. at 148-49 (first alteration in original) (footnote omitted). Our court has also recognized that structural errors are not subject to harmless

(continued. . .)

structural errors, including the denial of the right to retained counsel of choice, are not subject to harmless error review. This is because the integrity of our system of justice requires that the accused receive retained counsel of choice. As Justice Scalia noted in Gonzalez-Lopez, the sixth amendment right to counsel of choice

> commands, not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best. "The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the [s]ixth [a]mendment, including the [c]ounsel [c]lause."

548 U.S. at 146 (quoting Strickland v. Washington, 466 U.S. 668, 684-85 (1984)). It is beyond cavil that the accused's access to justice depends on his or her right to retained counsel of choice. Indeed, inherent in the right to retained counsel of choice is the recognition that the accused should have confidence and trust in his or her counsel, and accordingly, in the judicial system as a whole.[12]

---

(. . . continued)
error analysis. See, e.g., Ortiz, 91 Hawai'i at 193, 981 P.2d at 1139 (holding that the denial of a public trial is considered a structural defect and on this basis vacating the conviction).

There has been criticism of the dichotomy created between structural errors subject to automatic reversal and trial errors subject to a harmless error analysis. See, e.g., Cramer, 129 Hawai'i at 304-12, 299 P.3d at 764-71 (Acoba, J., concurring). We need not resolve this issue, however, in deciding the instant case.

[12] As articulated by Justice Stevens, courts should acknowledge the importance of "the function of the independent lawyer as a guardian of our freedom." Wheat v. United States, 486 U.S. 153, 172 (1988) (Stevens, J., dissenting) (citation omitted) (internal quotation mark omitted).

Commensurate with the importance of the right to retained counsel of choice, a presumption in its favor arises that must be overcome before it is denied.  Wheat v. United States, 486 U.S. 153, 164 (1988).  Thus, in Maddagan, we held that in considering a motion for withdrawal and substitution of counsel, a trial court must give "[d]ue regard for [the] proposition" that "in light of the right to counsel, and in the absence of countervailing considerations, a criminal defendant should have his, her, or its choice of retained counsel."  95 Hawai'i at 180, 19 P.3d at 1292.

In Cramer, this court "examine[d] the countervailing governmental interests that should be balanced against the right to counsel of choice."[13]  129 Hawai'i at 301, 299 P.3d at 761.  Cramer was found guilty of several drug-related charges and at his sentencing hearing, his privately retained counsel appeared on his behalf, seeking to step in for the deputy public defender and requesting a three-week continuance to prepare.  Id. at 296-97, 299 P.3d at 756-57.  The trial court denied Cramer's motion for substitution of counsel and a continuance, stating that it was "untimely."  Id. at 298, 299 P.3d at 758.

To review the trial court's ruling, we looked to cases from other jurisdictions that identified countervailing

_____

[13]  Cramer was decided approximately six months after the trial in the instant case.

12

interests that should be balanced against the right to private counsel of choice. First, we cited a California case that determined the following factors should be considered by the trial court in deciding a motion for substitution of counsel made on the day of trial:

> (1) length of the continuance; (2) whether there was a dilatory motive for the continuance; (3) whether the prosecution knew of the motions beforehand and whether the prosecution objected; (4) whether the delay would have inconvenienced the prosecution or its witnesses; (5) whether current court-appointed counsel was prepared to proceed; (6) whether the defendant had already retained private counsel; and (7) whether the continuance would interfere with the efficient administration of justice[.]

Id. at 301, 299 P.3d at 761 (citing People v. Butcher, 79 Cal. Rptr. 618, 621 (Cal. Ct. App. 1969)). We also discussed a Wisconsin case in which the appellate court affirmed the trial court's denial of a request for substitution of counsel one week prior to trial, after considering: (1) "the length of the delay requested"; (2) "whether competent counsel was presently available" and ready to proceed; (3) prior continuances; (4) inconvenience to the court, parties, and witnesses; and (5) "whether the delay was for legitimate reasons or whether its purpose was dilatory." Id. at 301-02, 299 P.3d at 761-62 (citing State v. Prineas, 766 N.W.2d 206, 212 (Wis. Ct. App. 2009)).

Turning to the facts of Cramer's case, we noted that the circuit court only considered one factor—the "timeliness of

13

the request"——and failed to address other relevant factors, including "the length of the delay requested, the impact of the delay on the prosecution, witnesses or the court, and whether the delay was for a dilatory purpose."  Id. at 302, 299 P.3d at 762.  We held that consideration of such factors led to a conclusion that Cramer's right to retained counsel was violated, citing the lack of prejudice to the State, the absence of evidence that delay would inconvenience witnesses or the court, and the fact that a previous continuance was stipulated:

> The State took no position on the request and there was no apparent prejudice to the State.  The record does not establish that the circuit court would have been inconvenienced by the request, particularly given that it subsequently ordered a one-week continuance of the sentencing hearing.  The record also does not establish that there were witnesses present at the initial hearing who would be inconvenienced by a continuance.  Furthermore, there had been only one prior continuance in the proceeding, which was a stipulated continuance of the trial from September 16, 2010 to November 4, 2010.  Under the circumstances, the court's summary denial of the motion for substitution and a continuance as untimely was an abuse of discretion.

Id.

As in Cramer, the record here does not reflect that the circuit court properly balanced Reed's right to counsel of choice against countervailing interests.  The circuit court supported its denial of Reed's motion for withdrawal and substitution of counsel by stating that the request was made "on the eve of trial" and new counsel was not ready to proceed; and by invoking the efficient administration of justice, given that

14

Reed had another criminal case pending and a jury was ready. The court also concluded, without explanation, that Reed's motion could be considered a "dilatory tactic."

However, these factors were either unsupported by the record or insufficient to outweigh Reed's constitutional right to retained counsel of choice. For one, as to the circuit court's consideration of the purpose behind the request, Reed's contention that "[n]othing in the record . . . supports the conclusion that [his] request to retain private counsel was simply a ploy to delay his trial" is persuasive. At no time did the State express concern that Reed engaged in tactics of delay. All continuances were justified efforts by Reed and the State to obtain grand jury transcripts, discovery, and potential witnesses. The DPD informed the court at the trial call the week before trial of Reed's intention of obtaining substitute counsel and Reed continued to seek new counsel despite the court's denial of his motion to continue. At the time of trial, Reed had procured private counsel, and his statements regarding appointed counsel's failure to prepare adequately for trial provided justification for his desire to substitute counsel, even at that late stage of the proceeding.

Regarding the issue of timeliness, while the court noted the motion for substitution was made "on the eve of

15

trial," it failed to consider that Reed had previously notified the court of his desire to substitute his counsel. Specifically, at the trial call held the week before trial, Reed moved for a continuance because he was "in the process of potentially retaining other counsel"[14] and because he was obtaining additional witness information. The circuit court denied Reed's motion. Because there were only two business days between the trial call and the start of trial, Reed was left with little opportunity to renew his request for substitution of counsel after the court denied his request for a continuance.

Although the circuit court's concern that new counsel was not ready to proceed to trial was a pertinent consideration, the court did not establish an additional crucial fact—the length of the continuance being requested. Absent that information, the court could not properly weigh this factor. Moreover, the court could not reasonably expect Reed's private counsel to be ready for trial prior to his formal entry into the case.

The remaining factor the circuit court relied on—inconvenience to the court, because a jury was ready to proceed and Reed had another criminal case pending—was an appropriate circumstance for the court to consider. We are mindful that the

---

[14] Reed's privately retained counsel confirmed that Reed had first contacted him "the day before" the October 10th trial call.

efficient administration of justice is an important issue for the trial court to address when deciding on a motion for withdrawal and substitution of counsel.  However, there is nothing in the record to explain the extent of the inconvenience to the court and nothing that indicates the court would not have been able to accommodate Reed's trial at a later date.

Moreover, the court failed to consider several factors that weighed in favor of granting Reed's motion.  As in Cramer, the State did not take a position on Reed's request, and there is no evidence in the record that the State would be prejudiced by a delay or that witnesses would have been inconvenienced.  In addition, the court did not consider the length of the delay requested, as it made no inquiry as to how much time private counsel would need to be ready for trial.  In terms of prior case delay, while the court previously granted Reed two continuances, both were brief, justified, and unopposed.  The first continuance was granted because discovery had not been completed and the second continuance was granted after the death of one of Reed's witnesses and the State's recent disclosures of three additional witnesses, among other reasons.

Further, Reed evinced a lack of confidence in his appointed counsel through statements to the court in support of his request for substitution and by actually retaining counsel,

17

who was prepared to enter an appearance if allowed a continuance. Indeed, Reed's explanation that he sought to substitute counsel because he was looking for "one fair trial" and because the DPD was "misrepresenting" him, aligns with the reasoning behind the constitutional right to private counsel of choice, i.e., to promote confidence between client and counsel and accordingly protect the integrity of the judicial process:

> The right to retain private counsel serves to foster the trust between attorney and client that is necessary for the attorney to be a truly effective advocate. Not only are decisions crucial to the defendant's liberty placed in counsel's hands, but the defendant's perception of the fairness of the process, and his [or her] willingness to acquiesce in its results, depend upon his [or her] confidence in his [or her] counsel's dedication, loyalty, and ability.

Maddagan, 95 Hawai'i at 179, 19 P.3d at 1291 (alterations in original) (citations omitted) (quoting Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 645 (1989) (Blackmun, J., dissenting)); cf. State v. Harter, 134 Hawai'i 308, 323, 340 P.3d 440, 455 (2014) (holding that although there is no absolute right to change court-appointed counsel, the trial court must examine the bases of a defendant's request to replace appointed counsel and "it must be 'the kind of inquiry that might ease the defendant's dissatisfaction, distrust, or concern'" (quoting Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir. 1991))).

This case requires us to consider whether countervailing considerations outweighed Reed's presumptive

18

right to privately retained counsel of choice. Here, the record reflects that the only supported justification for denying Reed's motion for substitution of counsel was the efficient administration of justice. However, as noted above, the record does not indicate that a delay would have been unduly problematic for the circuit court. In turn, several factors weighed in favor of granting Reed's request, including the lack of apparent prejudice to the State and Reed's motivation for obtaining new counsel. Under these circumstances, we cannot conclude that the need for judicial efficiency justified denying Reed his right to retained counsel of choice. As stated by the United States Supreme Court, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." Ungar v. Sarafite, 376 U.S. 575, 589 (1964) (citing Chandler v. Fretag, 348 U.S. 3 (1954)).

Accordingly, the court abused its discretion in denying Reed's motion for withdrawal and substitution of his retained counsel. Because the denial of the right to counsel of choice is a structural error, we need not subject the court's abuse of discretion to a harmless error analysis. Cramer, 129 Hawai'i at 303, 299 P.3d at 763.

### III. Conclusion

For the foregoing reasons, we vacate the ICA's June 9, 2014 judgment on appeal and the circuit court's January 11, 2013 judgment of conviction and sentence, and remand to the circuit court for a new trial.

Craig W. Jerome
for petitioner

Sonja P. McCullen
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

