**Electronically Filed
Supreme Court
SCWC-21-0000316
15-MAR-2023
08:07 AM
Dkt. 30 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

IN THE INTEREST OF JH

SCWC-21-0000316

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-21-0000316; FC-S NO. 18-00251)

MARCH 15, 2023

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND EDDINS, JJ.;
AND WILSON, J., DISSENTING[1]

OPINION OF THE COURT BY EDDINS, J.

At the start of this Child Protective Act case, the Family Court of the First Circuit appointed attorneys for a mother and father (Parents). Then, when Parents failed to appear at a court hearing, the court discharged counsel. Later, Parents reappeared, the court reappointed counsel, and the case

---

[1] At the time of this opinion's publication, Justice Wilson's dissent is forthcoming.

progressed.  After a trial, the family court terminated Parents' parental rights.

Because the family court discharged Parents' counsel before the case had ended, the Intermediate Court of Appeals (ICA) ruled that structural error occurred.  It ordered a new trial.

A family court must timely appoint counsel in parental rights cases.  Otherwise, structural error will nullify an outcome adverse to a parent.  But the appointment, discharge, and reappointment of counsel is different.

We hold that if the family court appoints counsel at the onset of a parental rights case, and later there's a break in representation due to a parent's voluntary absence, then there is no structural error.  As long as a fundamentally fair procedure ensues and due process is satisfied, the family court's decision will stand.

**I.**

JH was born in October 2018.  Soon after his birth, the Department of Human Services (DHS) assumed custody of JH under the Child Protective Act, Hawai'i Revised Statutes (HRS) §§ 587A-8 and 587A-9.[2]  Then DHS petitioned for temporary foster custody.

---

[2]    At birth, JH tested positive for unprescribed opiates.  While hospitalized in the Neonatal Intensive Care Unit at Kapi'olani Medical Center, JH was taken into police protective custody.  See HRS § 587A-8 (2018):

> (a)  A police officer shall assume protective custody of a child without a court order and without the consent of the

The family court appointed counsel for both parents at the first hearing on DHS's petition.

In July 2019, at a continued hearing, the court ordered Mother and Father to appear at a further hearing in 20 days. The court cautioned Parents: if they didn't appear on that date,

---

> child's family, if in the discretion of the police officer, the officer determines that:
>     (1)  The child is subject to imminent harm while in the custody of the child's family;
> . . . .
>     (4)  The child's parent has subjected the child to harm or threatened harm and the parent is likely to flee with the child.
> (b)  The department shall assume temporary foster custody of the child when a police officer has completed the transfer of protective custody of the child to the department as follows:
> . . . .
>     (2)  If the child is or will be admitted to a hospital or similar institution, the police officer shall immediately complete the transfer of protective custody to the department by notifying the department and receiving an acknowledgment from the hospital or similar institution that it has been informed that the child is under the temporary foster custody of the department.

Then, under HRS § 587A-9 (2018), DHS assumed temporary foster custody of JH.

> (a)  When the department receives protective custody of a child from the police, the department shall:
>     (1)  Assume temporary foster custody of the child if, in the discretion of the department, the department determines that the child is subject to imminent harm while in the custody of the child's family; [and]
> . . . .
>     (5)  Within three days, excluding Saturdays, Sundays, and holidays:
>         (A)  Relinquish temporary foster custody, return the child to the child's parents, and proceed pursuant to section 587A-11(4), (5), or (6);
>         (B)  Secure a voluntary placement agreement from the child's parents to place the child in foster care, and proceed pursuant to section 587A-11(6) or (8); or
>         (C)  File a petition with the court.

August 14, then the court could order a default judgment, decide the petition, and award foster custody of JH to DHS.

Neither parent showed on August 14, 2019. The court entered default judgments against Parents, waived their notice of future hearings, and discharged their counsel effective August 31, 2019.[3] The court advised counsel that if Parents contacted them, then counsel could file an ex parte motion to rescind the discharge order. The court also ordered the parents to appear at a periodic review hearing on January 21, 2020.

One week before the scheduled periodic review hearing, DHS moved to terminate Mother and Father's parental rights. The court scheduled this motion on the date of the periodic review hearing.

Mother and Father appeared on January 21, 2020. So did counsel.[4] Parents requested a trial on DHS's motion to terminate parental rights. Due to COVID-19 concerns and scheduling conflicts, the court continued the trial date several times.

---

[3]    The Honorable Brian A. Costa presided.

[4]    Parents appeared with their counsel at the periodic review hearing before the Honorable John C. Bryant. Nothing in the record, however, reflects that the court reappointed counsel. There is also nothing in the record – order-wise or otherwise - to reflect that Parents moved to set aside their default. Instead, the proceedings just resumed as if the court had not discharged Parents' attorneys and defaulted Parents. The family court and all parties - Mother, Father, DHS, and JH's Guardian Ad Litem - proceeded as if Parents' counsel had been reappointed. This opinion likewise treats Parents' appearance with their attorneys as a reappointment of counsel.

4

The trial on DHS's motion to terminate parental rights began nearly a year later, on January 7, 2021.[5]  Trial also happened on February 4, 2021 and March 30, 2021.  The parents, represented by counsel, appeared each day of their trial.

On April 26, 2021, the family court granted DHS's motion. The court terminated Mother and Father's parental rights.  It awarded DHS permanent custody of JH.  The court made the necessary findings under HRS § 587A-33(a).[6]  It also issued a termination of parental rights order, letters of permanent custody, and Findings of Fact and Conclusions of Law.

Parents appealed.  The ICA ordered supplemental briefing. It asked the parties to brief whether its holding in In the Interest of J.M. and Z.M., 150 Hawai'i 125, 497 P.3d 140 (App. 2021) applied.  That is, does the discharge of counsel during parental rights proceedings violate a parent's due process rights and amount to structural error?

---

[5]     The Honorable Andrew T. Park presided over the trial.

[6]     HRS § 587A-33(a) (2018) reads:

> (a) At a termination of parental rights hearing, the court shall determine whether there exists clear and convincing evidence that:
>      (1) A child's parent whose rights are subject to termination is not presently willing and able to provide the parent's child with a safe family home, even with the assistance of a service plan;
>      (2) It is not reasonably foreseeable that the child's parent whose rights are subject to termination will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care . . . .

The ICA vacated the family court's parental termination order and remanded for a new trial. As with In re J.M., it found structural error because the court discharged Parents' counsel before the Child Protective Act proceedings had ended.

We accepted DHS's cert application. DHS argues that there is no structural error. DHS maintains that despite the discharge of Parents' counsel and the five-month gap in representation, Parents received a fundamentally fair trial; due process was satisfied.

**II.**

Parents have a substantive liberty interest to parent their child. Haw. Const. art. I, § 5. They have a fundamental right to care, control, and have custody of their children. In re Doe, 99 Hawai‘i 522, 533, 57 P.3d 447, 458 (2002).

Parents faced with losing their parental rights have a right to counsel under the Hawai‘i Constitution's far-reaching due process clause. In re T.M., 131 Hawai‘i 419, 434, 319 P.3d 338, 353 (2014). An indigent parent's right to counsel kicks in when parental rights are substantially affected. See In re L.I., 149 Hawai‘i 118, 122, 482 P.3d 1079, 1083 (2021).

T.M. and L.I. involve the family court's failure to timely appoint counsel. We have not addressed what happens *after* a court appoints counsel at the start of Child Protective Act

(CPA) proceedings and later there's a gap in representation due to a parent's failure to appear in court.

Here, the ICA ordered a retrial. Citing T.M., L.I., and In re J.M., it believed the family court violated Parents' article I, section 5 due process right to counsel when it discharged appointed counsel. The error is structural, said the ICA. So Parents did not have to show that the court's discharge of counsel harmed them; the gap in Parents' legal representation was enough to vacate the order terminating their parental rights. We disagree.

There is no structural error.

T.M. and L.I. do not require automatic reversal for structural error when an indigent parent is not from start to finish represented by court-appointed counsel in CPA proceedings.

First, the ICA blends a failure to timely appoint counsel and a discharge of counsel. This case differs from T.M. and L.I. In those cases the family court belatedly appointed counsel for indigent parents.

In T.M., all parties had counsel throughout the CPA proceedings. But not TM's 15-year old mother. The court appointed counsel 19 months after DHS petitioned for temporary foster custody, about five months before the hearing that terminated her parental rights. Without counsel, TM's mother

7

had no legal advocate "to inform her of the limitations of the guardianship approach and of the possibility that if other options were pursued, her parental rights would be in jeopardy"; "advise her of significant deadlines" (like the two-year cutoff to provide a safe family home); or provide "necessary assistance to prepare for the . . . termination hearing." T.M., 131 Hawai'i at 432-33, 319 P.3d at 351-52. Mother may have kept her parental rights had the court appointed counsel sooner. Id. at 433, 319 P.3d at 352.

T.M. held that courts must appoint counsel to indigent parents once DHS petitions for custody. Requiring the family court to appoint counsel "remove[d] the vagaries of a case-by-case approach." T.M., 131 Hawai'i at 435, 319 P.3d at 354. A right to counsel was established.

Then in L.I., the court held that the failure to timely appoint counsel in cases that substantially affect parental rights is structural error. There, the family court appointed counsel three months after it awarded foster custody to DHS, and eight months after DHS first petitioned for family supervision of a mother's then-only child. L.I., 149 Hawai'i at 119-20, 123, 482 P.3d at 1080-81, 1084. The mother should have been appointed counsel once DHS petitioned for family supervision: "at that point, parental rights are substantially affected as

8

foster custody can be ordered by the court at a subsequent hearing." Id. at 122, 482 P.3d 1083.

The present case is unlike T.M. and L.I. The court timely appointed counsel at the start of the CPA proceedings, right after DHS petitioned for temporary foster custody of JH. And though the family court defaulted Parents and discharged their attorneys, the court reappointed counsel when Parents reappeared.

This is not a case where parents proceeded without counsel. Rather, because of the child's best interests, it's a case that at times necessarily proceeded without parents. The right to counsel is not automatically violated when a beneficiary of that right voluntarily absents themself from family court proceedings.

There is no structural error for another reason. A fundamentally fair process may still happen in discharge of appointed counsel cases.

Structural errors affect the trial's entire framework, its structure. See State v. Reed, 135 Hawai'i 381, 386, 351 P.3d 1147, 1152 (2015). Because a structural error makes the trial "fundamentally unfair," the trial is not subject to harmless error review. See State v. Loher, 140 Hawai'i 205, 214, 398 P.3d 794, 803 (2017). We have identified two features of a structural error: (1) "certain rights protected by the Hawai'i

Constitution are so basic to a fair trial that their contravention can never be deemed harmless"; and (2) "an error may be properly considered structural when the impact of the error on conviction is impossible to reliably assess and when harmless error review would require the appellate court to engage in pure speculation." Id. at 222, 398 P.3d at 811 (cleaned up).

Discharge of counsel cases do not present the same problems that surface when courts do not appoint counsel in the first place. If the court does not appoint counsel at the start of CPA proceedings, then "the harm suffered by parents proceeding without counsel may not be readily apparent from the record, especially because without the aid of counsel, it is unlikely that a case is adequately presented." See T.M., 131 at 436, 319 P.3d at 355 (cleaned up).

A family court's discharge of counsel, though, does not necessarily make a trial fundamentally unfair or an unreliable way to decide whether parental rights should terminate. Cf. In re RGB, 123 Hawai'i 1, 25, 229 P.3d, 1066, 1090 (2010) (observing the failure to timely appoint counsel always calls "the justice of the [trial] court's decision . . . into serious question"). Instead, the trial's fundamental fairness turns on the case's circumstances.

Third, there's no structural error in discharge of counsel cases because a bright-line rule – discharge of indigent parents' counsel at any stage constitutes structural error requiring vacatur – is inflexible. It ignores when, how long, and the reason parents' counsel were discharged. And it pays no attention to whether the proceedings were fundamentally fair.

There is still another problem with a structural error approach to cases involving discharged counsel. Automatic reversal and retrial cause friction with the key statutory time frame parents must meet to provide a safe family home. See HRS § 587A-33(a). Parents have two years from a child's entry into foster custody to become willing and able to provide a safe family home. This two-year deadline gives parents a reasonable time to provide a safe family home. And it advances the child's interests in a prompt and permanent resolution of their custody status. RGB, 123 Hawai'i at 26, 229 P.3d at 1091.

Throughout a CPA case, family courts must protect a parent's fundamental right to parent their child. But if the outcome of any break in counsel is vacatur and remand, then the time it takes to permanently place a child drags on. A parent's choice not to appear in court or maintain contact with counsel should not undermine a child's interests in permanency. See RGB, 123 Hawai'i at 26, 229 P.3d at 1091 (finding that "it is in

the child's best interest and overall well being to limit the potential for years of litigation and instability").

Parents sometimes fail to show up in court. When a parent inexcusably fails to appear in court, family courts often invoke Hawai'i Family Court Rules (HFCR) Rule 55(b).[7] The parties neither question nor discuss this apparent first circuit norm.[8] We stress that rule 55(b) should be used sparingly. And because parents have a fundamental right to parent their children, family courts should freely find good cause to set aside a default when a parent resurfaces and re-engages in the case.[9]

Until then, however, it is a reasonable exercise of discretion for the family court to discharge counsel. After

---

[7] HFCR Rule 55(b) reads:

> In a contested or uncontested action, where it appears from the record and by testimony (or by affidavit or declaration in an uncontested matrimonial action) that the adverse party has been duly served with the complaint or dispositive motion, and the adverse party has failed to appear or otherwise defend as provided by these rules, the court may grant an entry of default and proceed with a proof hearing, when a hearing is required, and enter a default judgment.

[8] JH's Guardian Ad Litem represented that "[t]he common procedure when a parent fails to appear without good cause is for them to be defaulted, for their counsel to be discharged if parents do not make contact within a certain period of time, and for counsel to be re-appointed if parents do reappear in the case, although the court's ruling often depends on the circumstances of the parents' non-appearance."

[9] In some cases, a court cannot freely set aside a parent's default without undermining a child's best interests and the CPA. For instance, if a parental rights case nears its end, then a court may use its discretion - after it provides a parent a fair process - to refuse a parent's request to set aside a default.

12

all, what's an attorney to do?  If a parent chooses not to appear in court or decides not to communicate with counsel, then counsel is hard-pressed to understand the parent's present objectives, and is challenged to provide sound, ethical representation.  See State v. Wilson, 144 Hawai'i 454, 463, 445 P.3d 35, 44 (2019) (explaining that "counsel has a duty to consult with the defendant before making strategic decisions when it is feasible and appropriate to do so"); Hawai'i Rules of Professional Conduct (HRPC) Rule 1.2 (providing "a lawyer shall abide by a client's decisions concerning the objectives of representation, and . . . shall consult with the client as to the means by which the objectives are to be pursued").

An advisement or colloquy may help.  We believe it is useful for family courts to advise parents at the beginning of Child Protective Act proceedings about the risks and consequences of their failure to appear and the importance of maintaining meaningful communication with counsel.  See State v. Kaulia, 128 Hawai'i 479, 493, 291 P.3d 377, 391 (2013) (noting "the best way to ensure a defendant's constitutional rights are protected is for the defendant to be informed of the nature of the right and the consequences of waiving that right").

**III.**

If there is no structural error after a family court discharges counsel in CPA proceedings, then how does an

13

appellate court determine whether the case satisfied due process?

The court assesses the proceedings to see if they were fundamentally fair.

This inquiry examines whether a parent received a fundamentally fair process under the circumstances of the case. We hold that a family court's discharge of counsel during proceedings that substantially affect parental rights only violates a parent's right to counsel if that discharge deprives the parent of a fundamentally fair process.

Due process and fundamental fairness intertwine. To satisfy article I, section 5, a judicial proceeding has to be fundamentally fair. See RGB, 123 Hawai'i at 25, 229 P.3d at 1090 (explaining that with ineffective assistance of counsel claims in CPA proceedings, courts should determine "whether it appears that the parents received a fundamentally fair trial whose facts demonstrate an accurate determination."); State v. Uchima, 147 Hawai'i 64, 76 n.14, 464 P.3d 852, 864 n.14 (2020) (explaining that article I, section 5 requires "standards necessary to ensure that judicial proceedings are fundamentally fair") (cleaned up)); Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C., 452 U.S. 18, 24 (1981) (finding that due process "expresses the requirement of 'fundamental fairness'").

Parents must receive "a fair procedure" before they lose their parental rights. In re Doe, 99 Hawai'i at 533, 57 P.3d at 458. The due process floor entails "notice and an opportunity to be heard at a meaningful time and in a meaningful manner." Id. A fair procedure, though, is more than just notice and an opportunity to be heard.

Due process is versatile. Context shapes the process that is due. See Mauna Kea Anaina Hou v. Bd. of Land & Nat. Res., 136 Hawai'i 376, 389, 363 P.3d 224, 237 (2015) (holding the due process is "flexible and depend[s] on many factors"); Sandy Beach Def. Fund v. City Council of City & Cnty. of Honolulu, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989) (holding that "due process is flexible and calls for such procedural protections as the particular situation demands" (cleaned up)). Due process's versatility means that the discharge of counsel in CPA proceedings "must be viewed in the broader context of . . . the family court proceeding" as a whole. See RGB, 123 Hawai'i at 27, 229 P.3d at 1092.

There is no violation of a parent's due process right to counsel when a family court discharges and later reappoints counsel, and the case, viewed in its entire context, establishes that the parent received a fundamentally fair trial and the family court accurately determined that parental rights should terminate. See id. at 25, 229 P.3d at 1090.

15

**IV.**

Here, Parents received a fair procedure. They were appointed counsel at the onset of the CPA proceedings and had a meaningful opportunity to participate in their case with the aid of counsel.

Parents benefitted from the assistance of court-appointed counsel. Once the proceedings were underway, counsel represented them for 22 of 27 months. The court discharged Parents' attorneys and defaulted Parents only after they inexcusably failed to appear at a court hearing. But when they did appear in court, so did counsel.

Parents' ability to present their case was not materially impacted by the five-month gap in legal representation. No hearings happened after the court discharged counsel. And when Parents reappeared on January 21, 2020 at the periodic review hearing, counsel appeared beside them. From then on, counsel represented Parents until the close of the trial on April 26, 2021, a trial that lasted three days and spanned three months.

On the final day of trial, before the family court terminated Mother and Father's parental rights, it confirmed compliance with the key Child Protective Act criterion: parents received the assistance of a service plan and "a reasonable period of time" to provide their child a safe family home. See HRS § 587A-33(a)(2).

16

The family court ruled that DHS proved by clear and convincing evidence that parental rights should terminate. See HRS § 587A-33(a)(1), (2). The record shows that substantial evidence supports the family court's HRS § 587A-33(a) termination of parental rights findings.

Due process was satisfied. Parents received a fair procedure before the family court terminated their parental rights. See In re Doe, 99 Hawai'i at 533, 57 P.3d at 458.

## V.

We reverse the ICA's judgment on appeal filed on March 2, 2022. The Family Court's April 28, 2021 Order Terminating Parental Rights is affirmed.

Kelly M. Kersten
(Abigail S. Dunn Apana, Julio Cesar Herrera, Patrick A. Pascual, Regina Anne M. Shimada on the briefs)
for petitioner Department of Human Services

Emily E.M. Hills
for Guardian Ad Litem

Clint K. Hamada and Herbert Y. Hamada
for Father

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

