Electronically Filed
Supreme Court
SCAP-24489
20-JUL-2017
08:13 AM

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Plaintiff-Appellee,

vs.

FRANK O. LOHER,
Defendant-Appellant.

SCAP-24489

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(ICA CASE NO. 24489; CR. NO. 99-1621)

JULY 20, 2017

NAKAYAMA, ACTING C.J., McKENNA, POLLACK, AND WILSON, JJ., AND
CIRCUIT COURT JUDGE NACINO, IN PLACE OF
RECKTENWALD, C.J., RECUSED

OPINION OF THE COURT BY POLLACK, J.

This case arises from the nearly seventeen-year old conviction of Frank O. Loher for attempted sexual assault in the first degree. At trial, Loher sought to present an alibi defense based in large part on the testimony of his wife and his

wife's son.  Although the trial was anticipated to last between five and six days, the State rested its case-in-chief in the early afternoon on the first day of the evidentiary portion of the trial.  When the circuit court informed defense counsel that the defense's witnesses would be required to testify that day, counsel sought a continuance to secure the witnesses' presence so that they could testify first.  The circuit court denied the requested continuance, and, over defense counsel's objection, the court ordered Loher to either take the stand at that time or forfeit his right to testify entirely.  As a result, Loher took the stand and testified before the other witnesses in the defense's case.

Following his conviction and his unsuccessful appeal, Loher sought relief in state and federal post-conviction proceedings.  As a result of the post-conviction proceedings, the Intermediate Court of Appeals' June 19, 2003 judgment on direct appeal was vacated so that Loher could raise a claim that his constitutional rights were violated when the circuit court ordered him to testify first or not at all.  Loher's case requires this court to consider whether the circuit court erred based on principles set forth in the United States Supreme Court's decision in Brooks v. Tennessee, 406 U.S. 605 (1972), the Hawai'i Constitution, and Hawai'i caselaw, and, if the court erred, whether the error is subject to harmless error review.

## I.    FACTS AND PROCEDURAL HISTORY

### A.    Circuit Court Trial

On August 19, 1999, Loher was indicted by a grand jury for attempted sexual assault in the first degree, in violation of HRS § 705-500 (1993) and HRS § 707-730(1)(a) (1993) (count one), and attempted kidnapping, in violation of HRS § 707-720(1)(d) (1993) (count two).  Loher v. State, 118 Hawaiʻi 522, 524, 193 P.3d 438, 440 (App. 2008), overruled on other grounds by State v. Auld, 136 Hawaiʻi 244, 361 P.3d 471 (2015).  The State filed a "Memorandum of Pretrial" on December 9, 1999, stating that the trial was expected to take five to six days.  Id.  On November 13, 2000, the State filed its "Witness and Exhibit List" identifying fourteen witnesses for the State.  Id.

Loher and the State each filed motions in limine relating to the evidence to be presented at trial.  Id.  During the hearing on the parties' motions, Loher stated that he intended to present an alibi defense and establish that he was not present during the attempted sexual assault and kidnapping.  Id.  Loher's counsel represented to the court that Loher would testify at trial, but at various times he also expressed the possibility that Loher would choose not to take the stand.  Loher v. State, No. 29818, 2011 WL 2132828, at *1 (App. May 31, 2011) (mem.).

The evidentiary portion of the jury trial commenced at 9:30 a.m. on Tuesday, November 14, 2000.[1] The State first called Honolulu Police Department (HPD) Officer Oryn Baum. Officer Baum testified that on July 29, 1999, at approximately 3:43 a.m., she was dispatched to an industrial area at 2722 Kakoi Street. Once she arrived, she was flagged down by a female identified by Officer Baum as the complaining witness. Officer Baum stated that the complaining witness's halter top was ripped, and the officer observed a "kind of a scratch" on her back. The complaining witness described her assailant, the vehicle he was driving, and the vehicle's license plate number. The vehicle was subsequently identified by Officer Baum as belonging to Frank and Andrea Loher. Following Officer Baum's testimony, the State called an HPD fingerprint identification technician who testified that five sets of fingerprints were recovered from Loher's car but that none were a match to the complaining witness.

The State then called the complaining witness. complainant testified that in the early morning hours of July 29, 1999, she was walking along Kapi'olani Boulevard when she accepted an offer of a ride to the airport from an individual

---

[1]     The Honorable Dexter D. Del Rosario presided over the trial.

with whom she was not acquainted who was driving a red car. The witness made an in-court identification of Loher as the driver.

The complaining witness related that after the driver got on the freeway, she fell asleep. When she woke up, the car was parked. The driver then demanded oral sex. As she tried to exit the vehicle, the complaining witness described that the driver ripped her shirt and scratched her back in an attempt to keep her inside of the car. She then ran out of the car to a nearby pay phone, which she used to call police. The complainant identified pictures presented by the State of the alleged crime scene and Loher's vehicle.

Following the lunch recess, the defense began its cross-examination of the complaining witness. The complainant confirmed that earlier in the evening and prior to the incident, she fought with her boyfriend because he got into a car with three other girls, and she did not want to see him with the other girls. The complaining witness clarified that she was walking because she wanted to go to the airport; she believed that if she could get to the airport, she could obtain free airline tickets from her boyfriend's uncle who worked for an airline. Following this testimony, at 1:39 p.m., HPD Detective Earl Takahashi was called by the State and testified that the complaining witness identified Loher as the driver in a photographic lineup.

After the conclusion of Detective Takahashi's testimony, the State rested its case at approximately 2:15 p.m. The court recessed, and at 2:27 p.m., the court reconvened outside the presence of the jury. Loher's counsel requested a continuance until the next trial day on Thursday morning because he "had no idea that [the State] would finish [its case] this early," given that the State had "quite a number of people on the witness list." Counsel stated that he told the defense witnesses to prepare to testify on Thursday; he related that he tried to "make a couple calls" to secure the presence of defense witnesses that day, but they were not available. Defense counsel apologized but stated that "it's too quick for us to have to present witnesses under the circumstances."

The circuit court denied the continuance request, citing Hawaii Rules of Evidence (HRE) Rule 611 (1993) and noting that there was more than enough time left in the day to proceed with trial.[2] The court stated that it would "allow the defense to call Mr. Loher to testify" at that time. Defense counsel

_____

[2]    HRE Rule 611(a) provides as follows:

The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

HRE Rule 611(a) (1993).

6

objected, noting that Loher had a right not to testify and that depending on the testimony of the other witnesses, Loher may choose not to take the stand. Counsel further argued that the court was essentially forcing Loher to testify.

> [Defense counsel]: . . . the Court is actually forcing [Loher] to take the stand because now we have nobody to call, and you're saying, Well, we can call Mr. Loher, but as a strategic manner in planning for our case, he was going to be the last witness I call, and depending how it went with the other witnesses, we may not need to call him because we can get everything that we need through the other witnesses.
>
> So, in fact, now that we're being forced to call him as first witness in a sense is prejudicial to Mr. Loher because he's being forced to testify when he, in essence, we had not decided fully whether or not he would testify for sure.

The court stated that it found defense counsel's argument unpersuasive because it was counsel's responsibility to prepare for trial.

> The Court: The Court does not find the argument persuasive. The Court believes that it was the responsibility or is the responsibility of counsel to determine when witnesses would be available.
>
> Defense counsel was free to discuss with the State the witnesses called and when they would anticipate finishing their case.
>
> Defense counsel has hopefully prepared for this case, so should be aware at the present time what the witnesses that he intends to call will testify. And having prepared and having a knowledge as to what they will say, since they are the defense witnesses, then they should be in the position to know whether the defendant should testify.

The court also stated that defense counsel had represented that Loher would testify concerning his alibi defense and suggested that defense counsel's objection to Loher testifying that day was manipulative.

The Court: . . . So the Court believes it is not persuasive that defense counsel should now argue to this Court, after the Court had denied his request to delay the trial till Thursday by saying that he does not know what his own witnesses will say and depending what they say, he will then make the decision whether his client's going to testify.

The Court would also note that during the pretrial conferences, as well as in the opening statement, the defendant has asserted an alibi that he was not present at the time, and that where the -- his location would be during certain times defense counsel has also represented to the Court that his client is going to testify.

The Court is not persuaded by his argument and is concerned that this may be manipulative in order to obtain the relief that the Court had not granted.

When defense counsel requested permission to respond to the court's concerns, the court refused, stating that it was unpersuaded by counsel's argument and directing counsel to call Loher to testify or waive his testimony.

[Defense counsel]: Well, if I can respond.

The Court: Excuse me, and the Court is unpersuaded by your argument. So we're going to proceed. You may call your client to testify, or if you wish, not to testify or engage in Tachibana at this time, and he may waive his testimony. That is between you and your client.

So I'm going to take a recess, and before we do that, is your client going to testify or is he going to waive his right to testify?

In response to the court's question whether Loher would testify or waive his right to testify, defense counsel responded, "I'd like to discuss that matter with him." The court then recessed so that defense counsel could discuss with Loher whether he would testify.

The court reconvened at 2:43 p.m., and the defense called Loher to testify. Loher stated that he was working on

8

the night in question.  When his shift ended at approximately 1:00 a.m. on the morning of July 29, he visited his wife, Andrea, at the hospital where she worked.  Loher left the hospital, went to his place of residence, and spoke with his wife on the phone, and he then slept from approximately 3:30 a.m. until 4:00 a.m.  Loher testified that he left his residence at around 4:30 a.m. to pick up Andrea's son, Moses, visit with Andrea at the hospital, and drive Moses to work.  Loher also testified that he had previously served in the United States Army.[3]

On cross-examination, the State elicited testimony that Loher had been dishonorably discharged from the United States Army.  Loher acknowledged that in a prior statement to Detective Takahashi, he did not say anything about speaking with his wife on the phone after leaving the hospital.  Additionally, Loher confirmed that he told Detective Takahashi that he left his residence to pick up Moses at 5:30 a.m., rather than at 4:30 a.m. as he had testified on direct examination.  Loher also agreed that he told Detective Takahashi that no one else had

---

[3] After defense counsel finished his direct examination of Loher, the circuit court granted the State's motion for the court to reconsider its ruling on a motion in limine excluding evidence of Loher's dishonorable discharge from the United States Army.  The court ruled that the State could establish that Loher was dishonorably discharged.

access to his car the night that the incident occurred.  After Loher finished testifying, the court recessed for the day.

When trial resumed on Thursday, November 16, 2000, the defense called Moses and Andrea to the stand.  Andrea testified that Loher arrived at the hospital to visit with her shortly before 2:00 a.m. and that he left at around 2:35 a.m.  Andrea stated that after Loher left the hospital and returned to his residence, she spoke with him on the phone twice, with the second call occurring at approximately 3:15 a.m. and lasting for fifteen to twenty minutes.  Andrea called Loher again at around 4:00 a.m. to wake him up so that he could take Moses to work. On cross-examination, Andrea admitted that some of her statements at trial were inconsistent with her prior statements to Detective Takahashi, and she further acknowledged that she had not told the detective that she called Loher at 4:00 a.m. to wake him up.

Moses testified that Loher arrived to pick him up at about 4:45 a.m. on the morning of July 29.  Moses stated that Loher drove him to visit with Andrea at the hospital and then to work, where they arrived at about 6:00 a.m.

The State then called three rebuttal witnesses who testified regarding Loher's place of residence and appearance on the day of the incident and Andrea's prior statements to HPD.

In closing arguments given that same day, both the State and the defense described the case as resting largely on credibility.

The jury found Loher guilty of count one, attempted sexual assault in the first degree.[4] On July 18, 2001, Loher was sentenced to an extended term of life imprisonment with the possibility of parole, subject to a repeat-offender mandatory minimum of thirteen years and four months. The court ordered Loher to serve his term of life imprisonment consecutively to sentences he was currently serving in unrelated matters.[5]

### B.     Direct Appeal (No. 24489)

Prior to sentencing, trial counsel withdrew as Loher's counsel, and appellate counsel was appointed to represent Loher.[6] On appeal, Loher challenged the jury instructions, the sufficiency of the evidence, and his sentence; he also raised a claim of ineffective assistance of trial counsel. Appellate counsel did not raise the issue of Loher being forced to testify before the other defense witnesses. The ICA rejected Loher's claims and affirmed his conviction and sentence. See State v.

---

[4]     The jury concluded that count two, attempted kidnapping, had merged with the offense charged in count one; thus, Loher was not convicted of count two.

[5]     Loher has since fully served the prior sentences and is currently serving the sentence imposed in this case. See Loher v. Thomas, 2016 WL 4745164, at *3 (D. Haw. Sept. 12, 2016); State v. Loher, No. 24489, 2003 WL 1950475, at *10 (App. Apr. 21, 2003) (mem.).

[6]     See Loher, 118 Hawai'i at 526, 193 P.3d at 442.

Loher (Loher I), No. 24489, 2003 WL 1950475 (App. Apr. 21, 2003) (mem.). Loher unsuccessfully sought certiorari review.

### C. Post-Conviction Proceedings

Thereafter, Loher engaged in post-conviction litigation in both state and federal court on the following three claims: (1) the circuit court violated his constitutional rights by forcing him to testify before any of his witnesses or not at all, in violation of Brooks v. Tennessee, 406 U.S. 605 (1972); (2) appellate counsel rendered ineffective assistance of counsel by failing to raise the Brooks forced testimony issue on direct appeal; and (3) the enhancement of his sentence based on facts found by the circuit court judge violated Apprendi v. New Jersey, 530 U.S. 466 (2000).

### i. State Post-Conviction Proceedings

In State v. Loher (Loher II), No. 26000, 2005 WL 335234 (App. Feb. 11, 2005) (mem.), the ICA rejected Loher's Apprendi claim and affirmed the circuit court's denial of Loher's motion for correction of sentence under Hawai'i Rules of Penal Procedure (HRPP) Rule 35 (1993).

In Loher v. State (Loher III), 118 Hawai'i 522, 539, 193 P.3d 438, 455 (App. 2008), overruled on other grounds by State v. Auld, 136 Hawai'i 244, 361 P.3d 471 (2015), the ICA affirmed in part and vacated in part the circuit court's denial

12

of an HRPP Rule 40 petition submitted by Loher.  Specifically,
the ICA noted that Loher's HRPP Rule 40 petition could be
construed to raise a claim that appellate counsel was
ineffective for failing to raise the Brooks forced testimony
issue on direct appeal.  118 Hawai'i at 532, 193 P.3d at 448.
The ICA concluded that the circuit court erred in denying the
HRPP Rule 40 petition without holding a hearing on the
ineffective assistance of counsel issue, and it therefore
remanded the case to the circuit court for an HRPP Rule 40
hearing.  Id. at 539, 193 P.3d at 455.

In Loher v. State (Loher IV), No. 29818, 2011 WL
2132828 (App. May 31, 2011) (mem.), the ICA reviewed the circuit
court's denial of Loher's HRPP Rule 40 petition following the
hearing conducted on remand pursuant to Loher III.  The ICA
recounted various parts of the testimony that were presented at
the hearing on remand.[7]  The ICA determined that the circuit

---

[7]     The ICA noted, inter alia, the following: (1) Loher testified
that he "did not want to testify" at trial and "felt forced to testify when
the judge threatened to 'end the trial right there on the spot'"; (2) Loher
further stated that he repeatedly told trial counsel that he did not want to
testify; (3) trial counsel testified that it appeared that Loher "always
wanted to testify," that Loher would testify "no matter what," and that
although he preferred for Loher to testify last, "the altered order of the
testimony '[didn't] change things that much'" because Loher needed to testify
to a critical time period that his other witnesses, Andrea and Moses, could
not account for; (4) and appellate counsel testified that he had not been
aware of any legal precedent on the issue of forced testimony and that he did
not raise the issue on direct appeal for this reason.  Loher IV, 2011 WL
2132828, at *4 (alteration in original).

court denied Loher's HRPP Rule 40 petition because Loher had already decided to testify prior to trial and because trial counsel was at fault for not having defense witnesses ready to testify after the State rested its case. Id. at *4-5. The ICA concluded that its opinion in State v. Kido, 102 Hawai'i 369, 76 P.3d 612 (App. 2003), had created several exceptions to the rule set forth in the U.S. Supreme Court's decision in Brooks v. Tennessee, 406 U.S. 605 (1972), and that at least two of these exceptions applied in Loher's case. Loher IV, 2011 WL 2132828, at *6-9. The ICA therefore ruled that the circuit court correctly concluded that appellate counsel's failure to raise the Brooks forced testimony issue on appeal did not amount to ineffective assistance of counsel. Id. at *10. The Loher IV court thus affirmed the circuit court's denial of Loher's HRPP Rule 40 petition. Id.[8]

### ii. Federal Habeas Proceedings

Following the ICA's decision in Loher IV, Loher, represented by the federal public defender's office, sought habeas relief in federal district court.

In Loher v. Thomas (Loher V), Civ. No. 11-00731 LEK-KSC, 2013 WL 8561780 (D. Haw. Oct. 2, 2013), United States

---

[8] Loher's request for certiorari review of the ICA's decision in Loher IV was denied by this court with two justices dissenting. See Loher v. State, No. SCWC-29818, 2011 WL 5926184 (Haw. Nov. 22, 2011) (order).

14

Magistrate Judge Kevin S.C. Chang entered findings and recommendations on Loher's habeas petition to grant in part Loher's Apprendi claim but to deny in part his ineffective assistance of counsel claim based on the Brooks forced testimony issue.

In Loher v. Thomas (Loher VI), 23 F. Supp. 3d 1182 (D. Haw. 2014), rev'd in part by Loher v. Thomas, 825 F.3d 1103 (9th Cir. 2016), District Judge Leslie E. Kobayashi of the United States District Court for the District of Hawaii adopted in part and rejected in part the recommendations of the magistrate judge. The district court determined that the ICA's application of Brooks in Loher IV was unreasonable, that a violation of Brooks occurred in this case, that the violation amounted to a structural error requiring automatic reversal of conviction, that the error was not harmless even if harmless error analysis applied, and that appellate counsel was ineffective for failing to raise the Brooks claim on direct appeal. Id. at 1193-1200. The district court therefore ordered that Loher be released within thirty days subject to appropriate release conditions, unless the State elected to retry him. Id. at 1200-01.

The State appealed the district court's ruling in Loher VI to the Ninth Circuit Court of Appeals. In Loher v. Thomas (Loher VII), 825 F.3d 1103 (9th Cir. 2016), the Ninth Circuit vacated in part and affirmed in part the district

court's ruling. Specifically, the Ninth Circuit concluded that the ICA's rejection of Loher's Brooks claim in Loher IV was not "objectively unreasonable."[9] Loher VII, 825 F.3d at 1115-17.

Next, the Ninth Circuit addressed Loher's claim regarding ineffective assistance of counsel. The court observed that while the ineffective assistance of counsel claim was independent of the Brooks claim, both claims related to the underlying merits of Loher's Brooks forced testimony argument. Id. Although the Ninth Circuit concluded that the ICA's "rejection of the Brooks claim in a post-conviction appeal, based on a post-conviction record, did not involve an objectively unreasonable application of Brooks," this conclusion "simply does not answer whether a 'reasonable probability exists' that Loher would have prevailed in his direct appeal, based on the trial record, if his counsel had raised a Brooks claim." Id. at 1120-21.

The court concluded that the State had waived its challenge to the federal district court's ruling that Loher was

---

[9] Federal courts may not grant a state prisoner's petition for writ of habeas corpus unless: (1) the state court decision was "contrary to, or involved an unreasonable application of, clearly established" federal law, or (2) the state court decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Loher VII, 825 F.3d at 1111 (quoting 28 U.S.C.A. § 2254(d) (West 1996)). As noted by the Loher VII court, "[t]his is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Id. (quoting Cullen v. Pinholster, 563 U.S. 170, 181 (2011)).

16

entitled to relief on the ground of ineffective assistance of counsel, and it also concluded that Loher prevailed on his Apprendi claim. Id. at 1121. Therefore, the court granted Loher's petition for writ of habeas corpus with respect to both his ineffective assistance of appellate counsel and Apprendi claims and remanded the case to the district court to determine the appropriate remedy. Id. at 1122-23.

On remand, the federal district court in Loher v. Thomas (Loher VIII), Civ. 11-00731 LEK-KSC, 2016 WL 4745164, at *3 (D. Haw. Sept. 12, 2016), issued a conditional writ directing the State to release Loher unless (1) the State moved to vacate the ICA's decision in Loher IV and (2) Loher's direct appeal in Loher I (No. 24489) was reinstated within ninety days. The parties agreed, and the district court ordered, that Loher's claim regarding ineffective assistance of counsel would be addressed first by reinstating his direct appeal; then, if Loher's direct appeal was unsuccessful, he could seek relief based upon his Apprendi claim. Id.

### iii.    Reinstatement of Direct Appeal (No. 24489)

Upon the State's motion, the ICA entered an order on October 25, 2016, vacating its judgments on appeal in Nos. 24489 and 29818. The ICA reinstated Loher's thirteen-year old direct appeal in No. 24489 to "allow Loher to raise on direct appeal his claim that, in violation of his constitutional rights, Loher

17

was 'forced' to testify when the trial court refused to grant Loher a continuance in order to testify after his other witnesses." On December 19, 2016, Loher's appeal was transferred to this court.

## II.    STANDARD OF REVIEW

This court "answer[s] questions of constitutional law by 'exercising our own independent judgment based on the facts of the case.'" State v. Aplaca, 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001) (quoting State v. Jenkins, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000)). Thus, "questions of constitutional law are reviewed on appeal 'under the "right/wrong" standard.'" Id. (quoting Jenkins, 93 Hawai'i at 100, 997 P.2d at 26).

## III.    DISCUSSION

On this renewed direct appeal, Loher contends that the circuit court's denial of a continuance, thereby forcing him to testify before his other witnesses or not at all, violated his fundamental rights under the federal and Hawai'i constitutions. Loher additionally argues that the circuit court's action in this case amounts to "structural error" and is therefore not subject to harmless error review.[10] The State submits that the

---

[10]     Loher alternatively submits that if harmless error review does apply, the State cannot prove that the error in this case was harmless beyond a reasonable doubt.

18

circuit court's denial of the requested continuance did not constitute error.  Even assuming the existence of error, the State contends that harmless error review is applicable and that any error in this case was harmless beyond a reasonable doubt.

A.      Interference with Defendant's Decision to Testify

i.           Relevant Caselaw

In Brooks v. Tennessee, the United States Supreme Court was called upon to review the constitutionality of a Tennessee statute that required a defendant wishing to testify to take the stand before any other testimony for the defense was presented.  406 U.S. 605, 606 (1972).  The Court stated that "the rule that a defendant must testify first" was based on a concern that defendants would observe the testimony of their witnesses, testify last, and tailor their testimony to match the prior witnesses' accounts.  Id. at 607.

In its analysis, the Court first considered the uncertainties facing a defendant who must decide whether or not to testify.  The Court noted that a defendant's choice to take the stand "may pose serious dangers to the success of an accused's defense" because it "carries with it serious risks of impeachment and cross-examination" and may also "open the door to otherwise inadmissible evidence which is damaging to his case."  Id. at 609 (quoting McGautha v. California, 402 U.S. 183, 213 (1971)).  The Court also pointed out that although a

19

defendant will usually have some idea of the strength of the defense's evidence, the defendant cannot be absolutely certain that the defense's "witnesses will testify as expected or that they will be effective on the stand." Id. The Court elaborated that such witnesses "may collapse under skillful and persistent cross-examination, and . . . fail to impress the jury as honest and reliable witnesses." Id. Additionally, "the defendant is unlikely to know" whether testimony of other witnesses "will prove entirely favorable." Id. at 609-10.

The Court reasoned that due to these uncertainties, a defendant may not know at the close of the State's case whether the defendant's own testimony "will be necessary or even helpful." Id. at 610. Thus, the defendant might prefer to remain silent rather than risk the dangers of then taking the stand, putting off testifying "until its value can be realistically assessed." Id. Under the Tennessee statute, however, defendants were denied the ability to realistically assess the value of their testimony before deciding whether to testify, as the statute required defendants to make the decision at the close of the State's case-in-chief and before presenting any other defense witnesses. Id. The Court determined that the statute "exacts a price for [the defendant's] silence" by keeping the defendant off the stand entirely unless the defendant chooses to testify first, thereby "cast[ing] a heavy

20

burden on a defendant's otherwise unconditional right not to take the stand." Id. at 610-11.

The Court concluded that although the statute reflected "a state interest in preventing testimonial influence," this interest was insufficient to overcome the defendant's constitutional right to remain silent. Id. at 611-12. The Court therefore held that the statute "violate[d] an accused's constitutional right to remain silent insofar as it requires [the defendant] to testify first for the defense or not at all." Id. at 612.

In addition to concluding that the statute violated the defendant's constitutional right to remain silent, the Court also determined that the statute infringed on the defendant's constitutional right to due process of law. Id. The Court observed that "[w]hether the defendant is to testify is an important tactical decision as well as a matter of constitutional right," and "[b]y requiring the accused and [defense counsel] to make that choice without an opportunity to evaluate the actual worth of their evidence, the statute restricts the defense--particularly counsel--in the planning of its case." Id. Further, the penalty for the defendant's decision to exercise his or her right to remain silent "is to keep the defendant off the stand entirely," even though counsel, as a matter of professional judgment, may want to call the

defendant to testify later in the trial.  Id.  As a result, the statute operated to deprive the accused of "the 'guiding hand of counsel' in the timing of this critical element of the defense."[11]  Id. at 612-13 (quoting Powell v. Alabama, 287 U.S 45, 69 (1932)).  Although the Court noted that "nothing [it] say[s] here otherwise curtails in any way the ordinary power of a trial judge to set the order of proof, the accused and [defense] counsel may not be restricted in deciding whether, and when in the course of presenting [the] defense, the accused should take the stand."  Id. at 613.

---

[11]    The Court held in part that the statute violated the defendant's constitutional due process rights as imposed on the states by the Fourteenth Amendment.  406 U.S. at 612.  However, subsequent decisions of the United States Supreme Court have alternatively characterized the due process clause violation found in Brooks as a violation of the defendant's right to the effective assistance of counsel.  See, e.g., Herring v. New York, 422 U.S. 853, 857-58 (1975) (identifying Brooks, 406 U.S. 605, as contributing to a "meaning [of the right to the assistance of counsel] that ensures to the defense in a criminal trial the opportunity to participate fully and fairly in the adversary factfinding process"); Cuyler v. Sullivan, 446 U.S. 335, 344 (1980) (stating that "court procedures that restrict a lawyer's tactical decision to put the defendant on the stand unconstitutionally abridge the right to counsel" and citing Brooks, 406 U.S. 605, as an example); United States v. Cronic, 466 U.S. 648, 659 n.25 (1984) (reasoning in context of the right to effective assistance of counsel that "a trial is unfair if the accused is denied counsel at a critical stage of [] trial" and citing Brooks, 406 U.S. 605, as an example); Strickland v. Washington, 466 U.S. 668, 686 (1984) (determining that "[g]overnment violates the right to effective assistance [of counsel] when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense" and citing Brooks, 406 U.S. 605, as an example); Bell v. Cone, 535 U.S. 685, 695, 696 n.3 (2002) (describing situations implicating the Sixth Amendment right to counsel and citing Brooks, 406 U.S. 605, as an example of an actual or constructive complete denial of counsel at a critical stage in the proceedings).

Hawai'i appellate courts have considered the principles established by Brooks on several occasions. In State v. Grindles, 70 Haw. 528, 533, 777 P.2d 1187, 1191 (1989), this court first relied on Brooks to hold that a defendant was entitled to have the State present its entire case before deciding whether or not to take the stand. In Grindles, the defendant was charged with driving under the influence of intoxicating liquor, and the relevant statute set forth one offense with alternative methods of proof.[12] Id. at 530-31, 777 P.2d at 1189. At trial, the court announced that it would bifurcate the proceedings based on the two alternative means of committing the offense. Id. at 529, 777 P.2d at 1189. After the State presented its evidence with respect to the first means of committing the offense, the court ordered that the defendant should present his case on that issue before the court would proceed with the State's case-in-chief on the second means. Id. at 529-30, 777 P.2d at 1189.

The defendant refused to present any testimony until the State had presented its entire case against him, arguing that the trial court's proposed procedures violated his

---

[12]    Commission of the offense at issue in Grindles could be demonstrated if either (1) the defendant operated a vehicle while under the influence of intoxicating liquor, or (2) the defendant operated a vehicle with "0.10 percent or more, by weight of alcohol in the person's blood." 70 Haw. at 530-31, 777 P.2d at 1189 (quoting HRS § 291-4(a) (repealed 2000)).

constitutional rights. Id. This court agreed, reasoning that as applied to criminal trials, the "denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice" and concluding that the trial court's procedures violated the defendant's "due process right to a fair trial" because the procedures were "fundamentally unfair." Id. at 532, 777 P.2d at 1190 (quoting Lisenba v. California, 314 U.S. 219, 236 (1941)).

The Grindles court also analyzed the Supreme Court's decision in Brooks, 406 U.S. 605, and observed the significance of "a defendant's constitutional interest in controlling the timing and sequence of evidence" in the defense's case. Grindles, 70 Haw. at 532, 777 P.2d at 1190. The court concluded that based on Brooks, 406 U.S. 605, "the defendant has an absolute right to hear the State's case" before deciding whether or not to testify. Grindles, 70 Haw. at 533, 777 P.2d at 1191 (emphasis omitted). As a result, the court determined that the procedures also improperly burdened the defendant's right against self-incrimination afforded by the Fifth Amendment to the United States Constitution and article I, section 10 of the Hawai'i Constitution. Id. at 532, 777 P.2d at 1190.

In State v. Kido, 102 Hawai'i 369, 378, 76 P.3d 612, 621 (App. 2003), the ICA applied Brooks and Grindles to hold that an order requiring a defendant to testify prior to other

defense witnesses violated the defendant's state and federal constitutional rights to due process and against self-incrimination. In Kido, the defense sought to begin its case at trial by calling to the stand a witness that was being held by the State on an unrelated matter; the witness was present at the courthouse, but was occupied in a different hearing. 102 Hawai'i at 371-72, 76 P.3d at 614-15. Because the witness was not available, the trial court required the defense to call the defendant to the stand because he was the only other witness present and because of the court's concern that the parties were "wasting time." Id. at 372, 76 P.3d at 615. Following defense counsel's overruled objection, the defendant testified and was subsequently convicted. Id.

On appeal, the ICA first reviewed the United States Supreme Court's decision in Brooks, 406 U.S. 605. Kido, 102 Hawai'i at 374-76, 76 P.3d at 617-19. The ICA noted that "some federal and state appellate courts, presented with averments of Brooks error, have declined to find constitutional error" in the following three categories of cases: (1) where "the trial court required that the defendant testify before only some of his witnesses"; (2) where "the defendant's decision whether to testify congealed before the trial court's action"; and (3) where "the defendant himself created the exigency for taking his testimony first." Id. at 376, 76 P.3d at 619. The ICA

elaborated that "[i]n so holding, some of those courts have noted the distinction between the statutory directive in Brooks and the trial court directive before them, though none have explained why the distinction makes a constitutional difference."  Id. (footnote omitted).

The ICA concluded, however, that "those cases [were] factually distinguishable" because "the choice foisted upon Kido was effectively the same choice the Tennessee statute forced upon Brooks"--i.e., testify first, before any other defense witnesses, or do not testify at all.  Id.  The ICA noted that the record contained no indication that the defendant had already decided to testify, that the defendant "created an exigency that pushed him to the head of the witness list," or that the inconvenience that would have resulted from delaying the proceedings to secure the presence of the other defense witness would have been anything more than "trifling."  Id. at 377, 76 P.3d at 620.  The ICA therefore held that the trial court abused its discretion in "directing, over Kido's objection, that he testify before his other defense witness." Id. at 378, 76 P.3d at 621.

The ICA again considered the issue of forced testimony in State v. Sale, 110 Hawai'i 386, 133 P.3d 815 (App. 2006).  In Sale, the defendant affirmed during trial that he would take the stand but sought to testify after his only other witness.  110

Hawai'i at 390-91, 133 P.3d at 819-20. However, when the other witness could not be located, the circuit court required the defense to proceed with its case "in the interest of not wasting time." Id. at 391, 133 P.3d at 820. As a result, the defendant took the stand and testified in his own defense. Id. Although the other witness was later located, he stated his intent to invoke his right against self-incrimination; when the defense sought to have the witness testify as to basic facts of his relationship with the defendant, the circuit court deemed such testimony inadmissible under HRE Rule 403 (1993). Id. at 391-92, 133 P.3d at 820-21.

The defendant in Sale subsequently appealed his conviction, arguing, inter alia, that the trial court erred in requiring him to testify before resolving whether his other witness would testify. Id. at 396, 133 P.3d at 825. The ICA in its decision analyzed both Brooks, 406 U.S. 605, and Kido, 102 Hawai'i 369, 76 P.3d 612, and observed that "[n]otwithstanding the broad language in Brooks, courts have declined to find constitutional error in circumstances factually distinguishable from Brooks." Sale, 110 Hawai'i at 397, 133 P.3d at 826. However, the ICA determined that it "need not address whether the circuit court's actions amounted to Brooks error" because it "conclude[d] that any error was harmless beyond a reasonable

doubt." Id.[13]  The ICA reasoned that the defendant "had already stated his decision to testify on the record" before the circuit court required him to testify first and the defendant "turned out to be the only witness for the defense."  Id. at 397-98, 133 P.3d at 826-27.

ii.     A Court May Not Restrict a Defendant in Deciding Whether and When to Testify

Caselaw of this jurisdiction and of the United States Supreme Court makes clear that a defendant and defense counsel "may not be restricted in deciding whether, and when in the course of presenting his [or her] defense, the accused should take the stand."  Brooks, 406 U.S. at 613.  Any such restriction violates Hawaii's constitutional guarantee against self-incrimination provided by article I, section 10, the right to due process of law under article I, section 5, and the right to

_____

        [13]    In its 2008 decision in Loher III, 118 Hawai'i at 539, 193 P.3d at 455, the ICA once again addressed Brooks and its progeny.  Although the ICA in Loher III addressed only whether appellate counsel was ineffective for failing to raise the Brooks forced testimony issue on direct appeal, it observed in a footnote that "in Kido, [the ICA] identified various situations where Brooks error would not be found."  118 Hawai'i at 533 n.6, 193 P.3d at 449 n.6.  The ICA then listed the three categories of cases identified in Kido and briefly recounted its opinions in both Kido and Sale.  Id.

        Additionally, in its unpublished opinion of Loher IV, No. 29818, 2011 WL 2132828, at *7-9, the ICA likewise stated that other courts "ha[d] held that no Brooks error exists" in the three categories of cases identified by Kido, and it applied two of the exceptions to determine that there was no Brooks error in Loher's case.

the assistance of counsel[14] under article I, section 14,[15] as well as the analogous provisions of the United States Constitution. See U.S. Const. amend. V; U.S. Const. amend. XIV; U.S. Const. amend. VI.

Although Brooks addressed a statute that imposed restrictions on a defendant's decision whether and when to take the stand, the Court's concerns that the restriction precluded the defendant from making the choice to testify or remain silent "in the unfettered exercise of [the defendant's] own will" and also deprived the accused of "the 'guiding hand of counsel'" apply with as much strength to a court's directive at trial as to a requirement imposed by statute. Id. at 610, 612-13 (first quoting Malloy v. Hogan, 378 U.S. 1, 8 (1964); then quoting Powell, 287 U.S. at 69); see also Kido, 102 Hawai'i at 376, 76

---

[14]    Although courts of this jurisdiction have previously found such a requirement to violate the privilege against self-incrimination and the right to due process, we concur with the reasoning of multiple decisions issued by the United States Supreme Court, see supra note 11, that the reasoning underlying the Brooks court's finding of a due process violation also implicates the constitutional guarantee to the effective assistance of counsel. See Brooks, 406 U.S. at 612-13 (describing the relevant violation as based on the accused's deprivation of "the 'guiding hand of counsel' in the timing of [a] critical element of [the] defense" and the fact that the statute "restricts the defense--particularly counsel--in the planning of its case" (quoting Powell, 287 U.S. at 69)).

[15]    See Haw. Const. art. I, § 10 ("[N]or shall any person be compelled in any criminal case to be a witness against oneself."); Haw. Const. art. I, § 5 ("No person shall be deprived of life, liberty or property without due process of law . . . ."); Haw. Const. art. I, § 14 ("In all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for the accused's defense.").

P.3d at 619 (observing that some courts have "noted the distinction between the statutory directive in Brooks and the trial court directive before them, though none have explained why the distinction makes a constitutional difference" (footnote omitted)); Grindles, 70 Haw. at 531-33, 777 P.2d at 1190-91 (deeming unconstitutional a trial court's bifurcation of proceedings and directive that a defendant testify prior to the close of the State's case based in part on Brooks, 406 U.S. 605).

The State argues, however, that no Brooks violation occurred in this case because this jurisdiction has adopted exceptions to the principles recognized in Brooks and because at least two of these exceptions apply. In support of its argument on this issue, the State relies primarily on the ICA's decision in Kido, 102 Hawai‘i 369, 76 P.3d 612.

Kido, however, did not adopt exceptions to the principles elucidated in Brooks. Rather, the ICA in Kido observed that "some federal and state appellate courts" had adopted such exceptions. 102 Hawai‘i at 376, 76 P.3d at 619 (emphasis added). The Kido court identified three categories of cases in which other courts confronted with a Brooks error had declined to find constitutional error. Id. Although the Kido court observed that the record was devoid of an indication that two of these exceptions were relevant to its disposition, it

ultimately concluded that the defendant's constitutional rights were violated because "the choice foisted upon Kido was effectively the same choice the Tennessee statute forced upon Brooks."  Id.

Nor did the ICA adopt exceptions to the Brooks ruling in Sale.  110 Hawai'i 386, 133 P.3d 815.  The ICA in Sale again stated that some courts had "declined to find" a Brooks violation in "factually distinguishable" circumstances.  Sale, 110 Hawai'i at 397, 133 P.3d at 826.  Although the Sale court did consider the legal relevance of one of the exceptions identified by Kido (namely, whether the defendant's decision to testify had "congealed")., it did so only within the context of determining whether any alleged Brooks error would be harmless beyond a reasonable doubt, thereby confirming that it did not find that this consideration should be analyzed in determining whether a violation occurred.  Sale, 110 Hawai'i at 397, 133 P.3d at 826.[16]

Significantly, this court has not adopted "exceptions" to the constitutional protections first set forth by the Supreme Court in Brooks and subsequently affirmed in this jurisdiction. Rather, this court's consideration of Brooks reflects our

---

[16]    While the ICA in Loher III observed in a footnote that "[i]n Kido, [the ICA] identified various situations where Brooks error would not be found," 118 Hawai'i at 533 n.6, 193 P.3d at 449 n.6, this appears to be based upon a misreading of its prior decision in Kido.

understanding of the grave importance of "a defendant's constitutional interest in controlling the timing and sequence of evidence in his defense." Grindles, 70 Haw. at 532, 777 P.2d at 1190. Further, the possible exceptions identified by the ICA in Kido are inconsistent with the protections afforded to defendants in this jurisdiction and with the concerns underlying the Supreme Court's decision in Brooks. 406 U.S. at 612-13.

One exception involves a factual inquiry into whether the defendant previously decided to testify and whether this decision had "congealed" prior to the trial court's requirement that the defendant testify or waive the right. Kido, 102 Hawai'i at 376, 76 P.3d at 619. This exception, however, is in derogation of the latitude given to a defendant to delay deciding whether to take the stand until after the defense's case has been presented and to be able to change one's mind following any preliminary decision. Brooks, 406 U.S. at 609-10. The Brooks Court's conclusion that a defendant is constitutionally entitled to not decide whether to testify until after viewing the strength of the defendant's case was based in large part on a concern that even though a defendant may make a preliminary decision whether to take the stand, such a decision may change after presentation of the

witnesses and other evidence in the defense's case.  See id.;
Grindles, 70 Haw. at 532-33, 777 P.2d at 1190-91.[17]  An
exception based on a defendant's preliminary decision as to
whether to take the stand would conflict with the ruling in
Brooks because it would remove the defendant's power to choose
whether, and when, to testify once a provisional decision had
been made, thereby eliminating the defendant's right to change
his or her mind as the defense's case at trial proceeds.

Adopting an exception to Brooks that excuses a
violation of a defendant's constitutional rights based on the
defendant's prior assertion that he or she would take the stand
is also inconsistent with fundamental principles that underlie
this court's decision in Tachibana v. State, 79 Hawai'i 226, 900
P.2d 1293 (1995).  In Tachibana, we held that trial courts must
conduct an on-the-record colloquy to advise defendants of their
right to testify and to determine whether the defendant wishes
to exercise or waive the right.  Id. at 237-38, 900 P.2d at
1304-05.  We concluded that the "ideal time" to conduct the

---

[17]    See also United States v. Cook, 608 F.2d 1175, 1189 (9th Cir.
1979) (Kennedy, J., dissenting in part and concurring in part) ("At the
outset of the trial, a defendant in good faith may intend to testify, but it
may be quite reasonable for him to change his mind after considering the
course taken by the evidence.  All of us know a defendant may tell a brave
story to his counsel only to succumb to fear once the full weight of the
prosecution's case becomes apparent.  In these instances a defendant and his
counsel often elect to invoke the self-incrimination privilege despite an
earlier plan to testify."), overruled on other grounds by Luce v. United
States, 469 U.S. 38 (1984).

colloquy is "immediately prior to the close of the defendant's case," based in large part on our observation that "the defendant may not be in a position to decide whether to waive the right to testify until all other evidence has been presented." Id. at 237, 900 P.2d at 1304. Implicit in our holding in Tachibana was our conclusion that a defendant must be afforded the opportunity to not decide whether to take the stand until the close of the defense's case. An exception that effectively waives the defendant's constitutional right to testify or not to testify based on a preliminary decision, made before the defense's case was presented, would be inconsistent with the principles enunciated in Tachibana.

An exception grounded in a defendant's prior assertion regarding the decision to testify would also run counter to the emphasis placed by Tachibana and its progeny on the fundamental importance of ensuring that such a decision is made knowingly and intelligently. Id. at 233-36, 900 P.2d at 1300-03; see also State v. Monteil, 134 Hawai'i 361, 371, 341 P.3d 567, 577 (2014) ("[A] decision by a defendant not to testify should be based upon a defendant's awareness of the 'relevant circumstances and likely consequences' of such a decision." (quoting Brady v. United States, 397 U.S. 742, 748 (1970))). In the context of deciding whether to testify or not testify, a fully-informed determination requires the defendant to have knowledge of and

"intelligently weigh" "the advantages and disadvantages" of testifying and being subject to cross-examination, which the defendant may be unable to assess until the close of the defense's case. Grindles, 70 Haw. at 532-33, 777 P.2d at 1190-91 (quoting Brooks, 406 U.S. at 608). Requiring the defendant to choose whether or not to take the stand based on a prior, preliminary decision--made before being able to assess the state of the defense at trial--will often impair the defendant's ability to make a knowing, fully-informed choice.

The remaining exceptions identified by the ICA in Kido suffer from similar flaws. 102 Hawai'i at 376, 76 P.3d at 619. The "exigency" exception is based on a defendant's relative fault for "creat[ing] the exigency for taking his testimony first." Id. This exception would result in the automatic forfeiture of a defendant's constitutional rights if, for example, defense counsel inaccurately predicts the number of witnesses who are called to testify by the State, overestimates the duration of the witnesses' testimony, misunderstands a communication by the State regarding the expected length of trial, or fails to anticipate that a defense witness will be tardy or not appear.[18]

_____

[18] See, e.g., Kido, 102 Hawai'i at 371-72, 76 P.3d at 614-15 (defendant required to testify first based on State's inability to produce

(continued. . .)

An exigency exception would therefore permit the errors of counsel to waive fundamental rights held exclusively by the defendant, despite our requirement that such relinquishment may be effectuated "only by the defendant." Tachibana, 79 Hawai'i at 232, 900 P.2d at 1299 (quoting State v. Silva, 78 Hawai'i 115, 123, 890 P.2d 702, 710 (App. 1995), abrogated on other grounds by Tachibana, 79 Hawai'i 226, 900 P.2d 1293); see also id. ("a defendant's personal constitutional right to testify truthfully . . . may not be waived by counsel as a matter of trial strategy" (quoting United States v. Moody, 977 F.2d 1425, 1431 (11th Cir. 1992))). Predicating the deprivation of a defendant's constitutional rights on inadvertent errors of counsel or a late arrival of a witness is also a deficient proxy for ensuring that a defendant makes a knowing, intelligent, and fully-informed decision whether to testify. See id. at 232, 900 P.2d at 1299.

The final exception identified by Kido relates to whether the trial court required that the defendant testify "before only some of his [or her] witnesses." 102 Hawai'i at

---

(. . .continued)

defense's other witness at trial); Sale, 110 Hawai'i at 390-91, 133 P.3d at 819-20 (defendant required to testify first based in part on defense counsel's inability to secure presence of other defense witness).

376, 76 P.3d at 619. However, compelling the defendant to testify or to give up that right after the first or second witness but prior to the remaining defense witnesses suffers from the same constitutional flaws as the two exceptions described above. Namely, such an exception would force the defendant to make the decision whether to testify before the value of the defense's remaining evidence could be "realistically assessed," Brooks, 406 U.S. at 610, and it would be an inadequate substitute for securing a defendant's knowing and intelligent waiver of his or her constitutional rights, Tachibana, 79 Hawai'i at 233-36, 900 P.2d at 1300-03. Further, there appears to be no reasonable basis for a rule that would prohibit the court from requiring a defendant to testify first, yet permit the court to order a defendant to testify or give up that right prior to the presentment of other witnesses in the defense's case.

Although it is true that under HRE Rule 611 (1993), the trial judge possesses the authority to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence," the rules of evidence "cannot override the constitutional rights of the accused." State v. Calbero, 71 Haw. 115, 124, 785 P.2d 157, 161 (1989); see also State v. Tetu, 139 Hawai'i 207, 214, 386 P.3d 844, 851 (2016) (observing that the rules of criminal procedure do not set "outer limit[s]" on

37

the court's power to protect constitutional rights).  The trial court may not rely on its authority to set the order of proof in a manner that violates the constitutional rights of defendants, and, therefore, it may not invoke such authority to require the defendant to testify before the defense's other witnesses or not at all.  See Brooks, 406 U.S. at 613 ("While nothing we say here otherwise curtails in any way the ordinary power of a trial judge to set the order of proof, the accused and his counsel may not be restricted in deciding whether, and when in the course of presenting his defense, the accused should take the stand." (emphases added)).  Accordingly, while a trial court may control the mode and order of the presentation of evidence at trial to serve the interests of judicial economy, "[p]ressuring the defendant to take the stand, by foreclosing later testimony if [the defendant] refuses, is not a constitutionally permissible means" of achieving this goal.[19]  Id. at 611.

In sum, the United States Supreme Court established in Brooks, 406 U.S. at 613, that a defendant may not be restricted in deciding whether to waive the privilege against self-incrimination or in determining when the defendant should take

_____

[19]    We observe that a trial court retains authority to deny a continuance requested by the defense during trial when, despite being given reasonable and sufficient opportunity to secure a witness, the witness does not appear at trial.

38

the stand in the defense's case. We adopted this principle in Grindles and concluded that the Hawai'i Constitution likewise protects a defendant's freedom to choose when and whether to testify for the defense. 70 Haw. at 531-33, 777 P.2d at 1190-91. The exceptions identified by the ICA in Kido, 102 Hawai'i at 376-77, 76 P.3d at 619-20, are inconsistent with this court's ruling in Grindles and contrary to the protections afforded to defendants under the Hawai'i Constitution, and, therefore, we decline to adopt them.[20]

**iii.    The Circuit Court Violated Loher's Constitutional Rights by Compelling Him to Testify Before His Other Witnesses or Not At All**

In this case, the State identified up to fourteen witnesses that it would call in its case-in-chief, and the trial was expected by the parties and the court to last between five and six days. On the first day of the evidentiary portion of the trial on Tuesday, November 14, 2000, the State rested its case at approximately 2:15 p.m. The circuit court then announced that it would take a brief recess, after which it would "give the defense an opportunity to present any evidence."

---

[20]    To the extent that Kido and other prior cases of the ICA may be read as approving such exceptions, this reading is rejected. See, e.g., Kido, 102 Hawai'i at 376-77, 76 P.3d at 619-20; Sale, 110 Hawai'i at 397, 133 P.3d at 826; Loher III, 118 Hawai'i at 533 n.6, 193 P.3d at 449 n.6; Loher IV, No. 29818, 2011 WL 2132828, at *7-9.

When the court reconvened outside the presence of the jury, defense counsel requested a continuance until the next trial day on Thursday, November 16, when the defense's witnesses had been arranged to appear. According to defense counsel, the unavailability of the two witnesses was due to counsel's approximation that the witnesses would not be needed until Thursday. Counsel informed the court that he "had no idea that [the State] would finish this early . . . because they have quite a number of people on the witness list."

Defense counsel further explained to the circuit court the reasons for requesting the continuance, stating that Loher "had not decided fully whether or not he would testify for sure." Counsel informed the court that "as a strategic manner in planning for [the defense's] case, [Loher] was going to be the last witness [he] call[ed]," and whether Loher testified or not would "depend[] how it went with the other witnesses." In response to counsel's objection, the circuit court stated that it was "the responsibility of counsel" to secure the presence of his witnesses, that defense counsel "should be aware . . . what the witnesses that he intends to call will testify," and that defense counsel had also "represented to the [circuit court] that his client [was] going to testify." Invoking its authority to set the order of proof under HRE Rule 611 (1993), the circuit court denied the request for a continuance over defense

40

counsel's objection.  The court announced, "So we're going to proceed.  You may call your client to testify, or if you wish, not to testify . . . and he may waive his testimony."[21]

The circuit court thus indisputably required Loher to either testify before his other witnesses or waive his right to testify entirely, thereby "restrict[ing]" Loher and his counsel "in deciding whether, and when in the course of presenting his defense, the accused should take the stand."  Brooks, 406 U.S. at 613; see also Grindles, 70 Haw. at 532-33, 777 P.2d at 1190-91.  In imposing this requirement, the circuit court unreasonably burdened Loher's privilege against self-incrimination in violation of the Fifth Amendment to the United States Constitution and article I, section 10 of the Hawai'i Constitution, preventing Loher from making the choice whether and when to testify free of coercion from the court.  See Brooks, 406 U.S. at 610 (noting that under the Tennessee statute, the defendant could not make the choice whether to testify "in the unfettered exercise of his own will" (quoting Malloy, 378 U.S. at 8)).

---

[21]    We observe that at the time the trial court ordered Loher to testify first or not at all, the ICA had not yet set forth its decisions in Kido, 102 Hawai'i 369, 76 P.3d 612, and Sale, 110 Hawai'i 386, 133 P.3d 815, observing the existence of "exceptions" in other jurisdictions to the rule set forth in Brooks, 406 U.S. 605.

The circuit court's actions also impaired Loher's constitutional right to the assistance of counsel as provided by the Sixth Amendment to the United States Constitution and article I, section 14 of the Hawai'i Constitution. Loher was deprived of an advisement by defense counsel on whether to take the stand that was fully-informed and made following counsel's "evaluat[ion] [of] the actual worth" of the defense's evidence, see Brooks, 406 U.S. at 612, and the circuit court undermined counsel's ability to present the defense of Loher's choosing.

Additionally, the circuit court's interference with counsel's ability to mount Loher's alibi defense burdened Loher's right to "be accorded 'a meaningful opportunity to present a complete defense,'" State v. Matafeo, 71 Haw. 183, 185, 787 P.2d 671, 672 (1990) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)), and represented a "failure to observe that fundamental fairness essential to the very concept of justice," Grindles, 70 Haw. at 532, 777 P.2d at 1190 (quoting Lisenba, 314 U.S at 236). Therefore, the circuit court's actions also violated Loher's right to due process of law under the Fourteenth Amendment to the United States Constitution and article I, section 5 of the Hawai'i Constitution.

B.     **Applicability of Structural Error or Harmless Error Analysis**

Because we conclude that Loher's constitutional rights were violated when the circuit court required him to testify before his other witnesses or forfeit his right to testify entirely, we must determine whether the violation is structural error or subject to harmless error analysis.  See State v. Reed, 135 Hawaiʻi 381, 386, 386 n.11, 351 P.3d 1147, 1152, 1152 n.11 (2015) (characterizing structural errors and stating that such errors are not subject to harmless error analysis).

i.     **Federal Constitution**

After concluding that the defendant was deprived of his constitutional rights in Brooks v. Tennessee, the United States Supreme Court did not explicitly address whether the violation was subject to harmless error analysis.  406 U.S. 605, 613 (1972).  Rather, the Court concluded that "[t]he State makes no claim that this was harmless error, and [the defendant] is entitled to a new trial."  Id. at 613 (citation omitted).

Following its decision in Brooks, the Supreme Court has on several occasions characterized Brooks as exemplifying a violation of the Sixth Amendment's guarantee of the assistance of counsel that requires no showing of prejudice.  See United States v. Cronic, 466 U.S. 648, 659 n.25 (1984) (observing that in the context of the Sixth Amendment right to the effective

assistance of counsel, Brooks, 406 U.S. 605, is an example where the Supreme Court "found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding").[22]  The Supreme Court has reasoned that no showing of prejudice is required in this situation in part because the denial of counsel is "so likely to prejudice the accused that the cost of litigating [its] effect in a particular case is unjustified," Cronic, 466 U.S. at 658, and because these circumstances "involve impairments of the Sixth Amendment right that are easy to identify" and "easy for the government to prevent," Strickland, 466 U.S. at 692; see also People v. Mitchell, 560 N.W.2d 600, 605 (Mich. 1997) (characterizing Brooks, 406 U.S. 605, as an example of "the court or the state directly interfer[ing] with the attorney-client relationship by preventing counsel from rendering assistance" and describing the

_____

[22]    See also Strickland v. Washington, 466 U.S. 668, 692 (1984) (explaining that "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice," as well as "various kinds of state interference with counsel's assistance" and citing the examples identified by Cronic, 466 U.S. at 659 n.25 (including Brooks, 406 U.S 605)); Bell v. Cone, 535 U.S. 685, 696 n.3 (2002) (relating certain situations where the Supreme Court "found a Sixth Amendment error without requiring a showing of prejudice" because the defendant was actually or constructively denied counsel and citing Brooks, 406 U.S. 605, as an example); Wright v. Van Patten, 552 U.S. 120, 124 (2008) (affirming that Cronic, 466 U.S. 648, establishes that no showing of prejudice is required to find a Sixth Amendment violation when "counsel is either totally absent, or prevented from assisting the accused during a critical stage of the proceeding" (alteration omitted) (quoting Cronic, 466 U.S. at 659 n.25)).

presumption of prejudice in such cases as a "prophylactic approach").[23]

### ii. State Constitution

We recognize that while some federal and state courts have considered Brooks violations to constitute structural error, other courts have applied harmless error analysis. However, this court has explicitly considered that the rights provided by the Hawai'i Constitution regarding due process of law, the privilege against self-incrimination, and the assistance of counsel--each of which was violated in this case-- may in certain circumstances provide greater protections to defendants in the State of Hawai'i.[24]  Thus, we consider whether,

---

[23]  Relying on the presumption of prejudice required by the Supreme Court's decision in Cronic, several state and federal courts have concluded that when a criminal defendant has been denied the right to counsel at a critical stage of the trial or when the ability of counsel to represent the defendant is subject to certain state interference, the harmless error rule does not apply.  See, e.g., United States v. Roy, 855 F.3d 1133, 1144, 1149 (11th Cir. 2017) (en banc) (describing Brooks, 406 U.S. 605, as exemplifying a "statutory or court-ordered interference exception to the prejudice requirement"); see also Wayne R. LaFave et al., Criminal Procedure 1072 (6th ed. 2017) (describing Brooks, 406 U.S. 605, as exemplifying the prohibition against "unconstitutional state imposed interference with counsel" which is "presumed prejudicial and therefore requires automatic reversal").

[24]  See, e.g., State v. Bowe, 77 Hawai'i 51, 58-60, 881 P.2d 538, 545-47 (1994) (collecting cases in which this court has "broadened the due process rights of the accused in criminal proceedings"); id. at 57-58, 881 P.2d at 544-45 ("reject[ing]" the United States Supreme Court's "narrow focus" regarding the concerns underlying the constitutional privilege against self-incrimination and holding that the protections afforded by article I, section 10 of the Hawai'i Constitution are "broader"); State v. Aplaca, 74 Haw. 54, 67 n.2, 837 P.2d 1298, 1305 n.2 (1992) (observing that "under Hawaii's [c]onstitution, defendants are clearly afforded greater protection of their right to effective assistance of counsel" than under the federal constitution).

given the nature and magnitude of the independent protections provided by the Hawaiʻi Constitution, the circuit court's restriction of Loher's decision regarding whether and when to testify in his defense constitutes structural error not subject to harmless error review.  See Reed, 135 Hawaiʻi at 386, 351 P.3d at 1152.

### 1.    Characteristics of Structural Errors Under Hawaiʻi Law

Decisions of our courts show that two related characteristics of an error may render it structural and thus not subject to harmless error analysis.  First, "certain rights protected by the Hawaiʻi Constitution" are "so basic to a fair trial that [their] contravention can never be deemed harmless." State v. Holbron, 80 Hawaiʻi 27, 32 n.12, 904 P.2d 912, 917 n.12 (1995) (alteration in original) (quoting State v. Suka, 79 Hawaiʻi 293, 299, 901 P.2d 1272, 1278 (App. 1995), overruled on other grounds by Holbron, 80 Hawaiʻi 27, 904 P.2d 912); see also State v. Cramer, 129 Hawaiʻi 296, 311, 299 P.3d 756, 771 (2013) (Acoba, J., concurring) (stating that this court "in determining whether to apply harmless error review to the violation of a particular right" should look in part to the "nature of the right at issue" (quoting Arizona v. Fulminante, 499 U.S. 279, 291 (1991) (White, J., dissenting in part))); State v. Mundon, 121 Hawaiʻi 339, 382, 219 P.3d 1126, 1169 (2009) (Acoba, J.,

concurring in part and dissenting in part) (observing that "Hawai'i courts have recognized that the Hawai'i Constitution protects certain rights 'so basic to a fair trial that [their] contravention can never be deemed harmless'" (quoting Holbron, 80 Hawai'i at 31 n.12, 904 P.2d at 918 n.12)).

Based on this principle, courts of our jurisdiction have relied on the inherent nature of the constitutional right at issue and its significance in affording the defendant a fundamentally fair trial to conclude that certain errors are not subject to harmlessness review. See, e.g., Mundon, 121 Hawai'i at 358, 219 P.3d at 1145 (trial court's failure to provide defendant with transcripts from prior proceedings did not require a showing of prejudice to merit vacatur and remand for a new trial in part because there was "innate value" to a defendant in being able to utilize transcripts to prepare for trial); State v. Silva, 78 Hawai'i 115, 121, 890 P.2d 702, 708 (App. 1995) (holding that "when the court assumes the role of a prosecutor, it violates the fundamental due process requirement that the tribunal be impartial, and such an error, by definition, is inherently prejudicial and not harmless"), abrogated on other grounds by Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995); State v. Chow, 77 Hawai'i 241, 249-51, 883 P.2d 663, 671-73 (App. 1994) ("doubt[ing]" that the denial of an

opportunity to engage in presentence allocution "can ever be harmless error," based in part on the status of allocution as a "significant aspect of the fair treatment which should be accorded a defendant in the sentencing process" and its use as a tool to maximize the perceived equity of the criminal process); Reed, 135 Hawaiʻi at 386, 351 P.3d at 1152 (stating that violation of the right to retained counsel of choice constitutes structural error in part because the right is "deemed of such importance" and because it is required to maintain "the integrity of our system of justice").

Second, this court has considered that an error may be properly considered structural when the impact of the error on conviction is impossible to reliably assess and when harmless error review would require the appellate court to engage in pure speculation. For instance, in Cramer, 129 Hawaiʻi at 303, 299 P.3d at 763, this court suggested that denial of the right to privately retained counsel of choice under article I, section 14 of the Hawaiʻi Constitution constituted structural error. We concluded in Cramer that denial of the defendant's counsel of choice at a sentencing hearing constituted error and quoted the Supreme Court's reasoning that it is "impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome

of the proceedings." Id. (quoting United States v. Gonzalez-Lopez, 548 U.S. 140, 150 (2006)). Likewise, we concluded that requiring the defendant in Cramer "to argue that he was 'prejudiced'" by the violation would require this court to "speculate as to how [the counsel of choice] would have represented [the defendant] at the sentencing hearing." Id. We therefore vacated the defendant's judgment and remanded for resentencing without conducting a harmless error analysis. Id.

We again considered the speculative nature of the impact of a right to counsel violation in State v. Harter, where we suggested that ineffective assistance of counsel due to a conflict of interest may require no showing of prejudice to require vacatur and remand for a new trial. 134 Hawai'i 308, 327-28, 340 P.3d 440, 459-60 (2014). Significantly, we noted that "it would be impractical to require a defendant to prove 'adverse effect' in such a case" because it would be impossible to know what choices a different lawyer would make in representing the defendant and because "appellate inquiry 'into a claim of harmless error' may require 'unguided speculation.'" Id. (first quoting Cramer, 129 Hawai'i at 303, 299 P.3d at 763; then quoting Holloway v. Arkansas, 435 U.S. 475, 491 (1978) (improper denial of motion to withdraw based on conflict of interest constituted error not subject to harmlessness analysis)). In support of this proposition, we also quoted the

Supreme Court's observations that "it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client" and that "to assess the impact of a conflict of interest on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible."[25] Id. at 328 n.24, 340 P.3d at 460 n.24; see also State v. Phua, 135 Hawai'i 504, 517, 353 P.3d 1046, 1059 (2015) (vacating and remanding without engaging in harmless error analysis where no valid waiver of counsel was made by the defendant at sentencing, thereby depriving him of the constitutional right to counsel at a critical stage of the proceedings); State v. Pitts, 131 Hawai'i 537, 319 P.3d 456 (2014) (vacating and remanding without engaging in harmless error analysis for deprivation of the constitutional right to counsel during "critical stage[s]" of post-verdict motion proceeding and sentencing).

## 2. Restricting a Defendant in Deciding Whether and When to Testify Amounts to Structural Error Under Hawai'i Law

In this court's adoption of Brooks, we did not analyze whether the error was harmless when we vacated the defendant's conviction and remanded for a new trial. State v. Grindles, 70

---

[25] The Harter court ultimately concluded that it need not determine whether a finding of prejudice was required because the defendant did not voluntarily consent to the attorney-client relationship as required under our conflict of interest standard, which, standing alone, was sufficient to require vacatur. 134 Hawai'i at 328, 340 P.3d at 460.

Haw. 528, 531-33, 777 P.2d 1187, 1190-91 (1989). Rather, the Grindles court vacated the conviction and remanded to the trial court without considering the effect of the constitutional violation on the underlying conviction. Id. Despite this court's ruling in Grindles, the ICA in State v. Kido held that a constitutional violation stemming from a trial court's requirement that the defendant testify before other defense witnesses is subject to harmless error review. 102 Hawai'i 369, 378, 76 P.3d 612, 621 (App. 2003). Underlying the ICA's ruling were its conclusions that the Brooks court "implied[]" that such review was applicable and that the violation was not "of the kind and magnitude" that this court had intimated could never be deemed harmless. Id. (citing Holbron, 80 Hawai'i at 32 n.12, 904 P.2d at 917 n.12).

However, the ICA in Kido analyzed neither the nature nor the "magnitude" of the vital constitutional rights that were unreasonably burdened. A court's interference with a defendant's decision whether and when to testify results in the violation of the defendant's constitutional privilege against self-incrimination, right to the effective assistance of counsel, and right to due process of law. The fundamental nature of these three constitutional protections establishes that Loher was deprived of rights "basic to a fair trial."

51

Holbron, 80 Hawaiʻi at 32 n.12, 904 P.2d at 917 n.12 (quoting

Suka, 79 Hawaiʻi at 299, 901 P.2d at 1278).

First, equally vital to our system of justice are

"both the right to testify and the right not to testify." State

v. Monteil, 134 Hawaiʻi 361, 369, 341 P.3d 567, 575 (2014)

(observing that "Hawaiʻi has historically protected" both

rights). Whether to take the stand is a critical question that

may pose substantial dangers to the defense's case, particularly

because it subjects the defendant to cross-examination by the

State. Grindles, 70 Haw. at 532, 777 P.2d at 1190 (quoting

Brooks, 406 U.S. at 608); see also Brooks, 406 U.S. at 609

("none would deny that the choice itself may pose serious

dangers to the success of an accused's defense"). As observed

by the Supreme Court in Brooks, a defendant's choice to take the

stand "carries with it serious risks of impeachment and cross-

examination" and may also "open the door to otherwise

inadmissible evidence which is damaging to his case." 406 U.S.

at 609 (quoting McGautha v. California, 402 U.S. 183, 213

(1971)). For this reason, our jurisdiction has adopted

significant safeguards to ensure that a defendant's

constitutionally-protected decision to testify or not testify is

made knowingly, intelligently, and free of state coercion. See,

e.g., Tachibana, 79 Hawai'i at 236, 900 P.2d at 1303; Monteil, 134 Hawai'i at 371, 341 P.3d at 577.

It is also "well-settled that 'the right of one charged with a crime to counsel is deemed fundamental and essential to a fair trial.'" Mundon, 121 Hawai'i at 366, 219 P.3d at 1153 (alterations omitted) (quoting Gideon v. Wainwright, 372 U.S. 335, 344 (1963)). A defendant may "lack[] both the skill and knowledge to adequately prepare" and present his or her defense, and for this reason, it is crucial that the defendant is provided with the "guiding hand of counsel at every step in the proceedings against him." Id. (quoting Geders v. United States, 425 U.S. 80, 89 (1976)). In this regard, defense counsel's advisement regarding the tactical advantages and disadvantages of taking the stand is crucially important to a defendant who must make the decision whether to waive the privilege against self-incrimination and testify in his or her defense. Tachibana, 79 Hawai'i at 232, 900 P.2d at 1299. By restricting the ability of the defendant to freely make this significant decision with the informed advice of counsel, the court "exceeds its judicial power and authority" by interfering with counsel's ability to provide representation and "invad[ing] the province of the attorney-client relationship." Silva, 78 Hawai'i at 125, 890 P.2d at 712.

Finally, it is of paramount importance that defendants in our jurisdiction are "accorded 'a meaningful opportunity to present a complete defense'" in order to satisfy the guarantees that due process affords. State v. Matafeo, 71 Haw. 183, 185, 787 P.2d 671, 672 (1990) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)). "A primary reason that a defendant is guaranteed effective assistance of counsel is to ensure that the defendant is not denied due process," State v. Tetu, 139 Hawai'i 207, 219, 386 P.3d 844, 856 (2016), because counsel helps ensure that the defendant is able to present the defense of his or her choosing and receives a fundamentally fair trial. Requiring defense counsel to present the testimony of the defendant first, rather than following the presentation of the remainder of the case, undermines the ability of counsel to plan and present the defense's case. Where no other defense witnesses have testified, counsel may be bound to frame questioning differently or elicit a broader swathe of testimony, thereby increasing the "serious risks of impeachment and cross-examination." Brooks, 406 U.S. at 609. A trial court's interference with the defendant's ability to make an informed, unrestricted decision whether to waive a critical constitutional privilege undermines "that fundamental fairness essential to the very concept of justice." Grindles, 70 Haw. at 532, 777 P.2d at 1190 (quoting Lisenba v. California, 314 U.S. 219, 236 (1941)).

Our caselaw is thus clear that each of the three constitutional rights that were violated by the circuit court is fundamentally important in guaranteeing to the accused a fair trial.  And, because of their complementary protections, these provisions may overlap to strengthen the constitutional rights afforded to criminal defendants in the adversarial process.

Additionally, an application of harmless error review in this case would require appellate courts to engage in unguided speculation regarding the impact of the three constitutional violations on the subsequent conviction.  See Cramer, 129 Hawai'i at 303, 299 P.3d at 763.  By nature of the court's error in restricting the defendant's decision whether and when to take the stand, the defendant is compelled to either invoke the constitutional right to remain silent or to waive the privilege against self-incrimination and testify in his or her own defense.  An assessment of the error's impact on conviction presents several significant difficulties that would ultimately render it impossible to reliably determine whether there was a reasonable possibility that the error might have contributed to the defendant's conviction.  See Holbron, 80 Hawai'i at 32, 904 P.2d at 917 (setting forth harmless error review standard).

First, the harmlessness inquiry would require the court to speculate as to what choice the defendant may have made as to testifying if he or she were afforded the opportunity to

not choose until after presentation of the defense's case.

Second, it would require the court to speculate as to what

guidance <u>defense counsel</u> would have given after counsel's

presentation of the defense and assessment of the actual

strengths and weaknesses of the case, as well as whether the

defendant would in fact have heeded counsel's advice.[26]  Third,

in cases where the defendant invoked the privilege to remain

silent but may have testified absent the court's erroneous

directive, the appellate court would be required to surmise the

entirety of the defendant's testimony to assess how the

conviction may have been impacted.  Similarly, if the defendant

took the stand following the court's error, it would be

impossible to determine how the content of the testimony,

including cross-examination and impeachment, would have differed

---

[26]    Even when the remaining defense witnesses are subsequently unable to give testimony, the impact of the trial court's error is similarly speculative.  Defense counsel's advice on whether to take the stand is often influenced by what counsel anticipates the defense witnesses may testify to and the relative strengths, weaknesses, and comprehensiveness of their testimony.  In this situation, the appellate court would be required to speculate whether and how, had defense counsel known that the witnesses would be unable to testify, the advice would have differed.  The circumstances of <u>State v. Sale</u>, 110 Hawai'i 386, 133 P.3d 815 (App. 2006), present an instructive example.  In that case, the defendant was required by the court to decide whether he would testify prior to resolving the availability of his only other witness.  <u>Id.</u> at 390-92, 133 P.3d at 819-21.  The defendant elected to take the stand, and it was subsequently determined that his witness would be unable to testify because he would invoke his own privilege against self-incrimination that related to the charge against the defendant. <u>Id.</u>  Assessing the impact of error on conviction would have required an appellate court to speculate as to what advice the defendant's counsel would have given had counsel known that the witness would be deemed unavailable and unable to give testimony in the defendant's case.

had the defendant been permitted to testify following presentation of the remainder of the defense's case. Consequently, given the multitude of factors that influence the defendant's personal decision to testify, defense counsel's professional advisement regarding the choice to testify, and counsel's presentment of the defense's case, it would be "virtually impossible" to assess the impact of the violation.[27] Harter, 134 Hawaiʻi at 328 n.24, 340 P.3d at 460 n.24 (quoting Holloway, 435 U.S. at 490).

The circuit court's procedures in this case represented direct state interference with the exercise of three core, fundamental rights. The nature of these three constitutional rights, their importance in this jurisdiction in guaranteeing to the accused a fair trial, and the speculation that would be required were an appellate court to gauge the impact of their violation on conviction under harmless error review manifest that the error in this case can "never be deemed harmless" under the Hawaiʻi Constitution.[28] Holbron, 80 Hawaiʻi

---

[27] The ICA's analysis in Kido, 102 Hawaiʻi at 379, 76 P.3d at 622, is instructive. In Kido, harmless error analysis required the ICA to speculate whether the defendant would have testified absent the court's error; the ICA guessed that had the court permitted the defendant to testify after his other witness, "perhaps [the defendant] would then have been well advised to leave well enough alone." 102 Hawaiʻi at 379, 76 P.3d at 622.

[28] We further observe that classification of the error at issue here as structural protects against a particular violation of three fundamental

(continued. . .)

at 32 n.12, 904 P.2d at 917 n.12 (quoting Suka, 79 Hawai'i at 299, 901 P.2d at 1278).[29]  Thus, consistent with our prior decision in Grindles, 70 Haw. at 534, 777 P.2d at 1192, the error in this case--which consisted of a violation of three fundamental constitutional rights--is structural and therefore requires vacatur of the defendant's conviction and remand of the case for a new trial.[30]

## IV.    CONCLUSION

The circuit court erred when it restricted Loher in deciding whether and when in the course of presenting his defense he should take the stand, thereby violating his constitutional privilege against self-incrimination, his constitutional right to the assistance of counsel, and his right

---

(. . .continued)

constitutional rights that is "easy to identify" and "easy for the government to prevent."  Strickland, 466 U.S. at 692 (reasoning that prejudice is presumed in actual or constructive denials of counsel and "various kinds of state interference with counsel's assistance" in part because such violations are "easy for the government to prevent"); see also People v. Mitchell, 560 N.W.2d 600, 605 (Mich. 1997) (describing this presumption of prejudice as a "prophylactic approach").

[29]     Therefore, to the extent that the ICA in prior decisions has applied harmless error analysis to violations of the principles set forth in Grindles, 70 Haw. 528, 777 P.2d 1187, these decisions are overruled.  See Kido, 102 Hawai'i at 378-79, 76 P.3d at 621-22; State v. Sale, 110 Hawai'i 386, 397-98, 133 P.3d 815, 826-27 (App. 2006); Loher III, 118 Hawai'i at 533 n.6, 193 P.3d at 449 n.6; Loher IV, 2011 WL 2132828, at *7-9.

[30]     Because we conclude that the error in this case is structural and therefore not subject to harmless error review, we do not address the State's contention that the error was harmless beyond a reasonable doubt.

to due process of law.  Under the Hawai'i Constitution, harmless error analysis does not apply to the circuit court's error. Based on the foregoing, the circuit court's July 18, 2001 Judgment is vacated, and the case is remanded for a new trial.

Peter C. Wolff, Jr., and
Craig W. Jerome
for appellant

Brian R. Vincent
for appellee

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

/s/ Edwin C. Nacino

