**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000316
31-JAN-2022
07:57 AM
Dkt. 124 SO**

NO. CAAP-21-0000316

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF J.H.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 18-00251)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and McCullen, JJ.)

Appellant Father (**Father**) and Cross-Appellant Mother (**Mother**) appeal from the Order Terminating Parental Rights filed on April 28, 2021, in the Family Court of the First Circuit (**Family Court**).[1]  Father's and Mother's parental rights to their child (**J.H.**) were terminated.

On appeal, Father challenges Findings of Fact (**FOFs**) 9, 29, 38, 46, 49, 69, 135, 141, 151-54, 164-65, and 177.  Father contends that Petitioner-Appellee the State of Hawaiʻi, Department of Human Services (**DHS**), failed to provide him with a reasonable opportunity to reunify by denying any form of visitation with J.H., the Family Court violated his due process rights by denying his request to delay the termination of

_____

[1]  The Honorable Andrew T. Park presided.

parental rights proceeding until after his trial on alleged sexual abuse of his minor step-daughter (**SA**) was concluded, and his due process rights were violated when his court appointed attorney was discharged for a period of time during the proceeding.

On cross appeal, Mother challenges FOFs 149 and 164 and Conclusions of Law (**COLS**) 16 and 17. Mother contends that there was not clear and convincing evidence that she was not presently willing and able to provide a safe family home or that it was reasonably foreseeable she would become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time not to exceed two years from the date J.H. entered foster care, DHS failed to provide a reasonable effort to provide a service plan when it failed to re-refer her for a psychological evaluation, and the Family Court violated her due process right by denying her motion for a continuance due to her hospitalization.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Father's and Mother's points of error as follows:

"DHS is under an obligation to provide a reasonable opportunity to parents through a service plan to reunify the family." In re Doe, 100 Hawaiʻi 335, 343, 60 P.3d 285, 293 (2002) (interpreting Hawaii Revised Statutes (**HRS**) Chapter 587,

2

the predecessor to HRS Chapter 587A).  The Family Service Plan stated that Father would not be permitted to have visitation with J.H. until it was deemed appropriate and approved by Father's sex offender treatment therapist and in consultation with the Guardian Ad Litem (**GAL**).  Father does not contest that he refused to participate in any of the services in the Family Service Plan, including sex offender treatment.  Thus, Father did not have a sex offender treatment therapist approve visitation.  At no time did Father challenge the Family Service Plan.  "[A] claim for additional services and accommodations must be timely made."  Id. at 344, 60 P.3d at 294.  Father did not raise the issue of lack of visitation until trial.  Under these circumstances, we cannot conclude that Father's contentions regarding visitation have merit.  See id.

Father further contends that the Family Court violated his due process rights by denying his request to delay the termination of parental rights proceeding until after his trial on alleged sexual abuse of his minor step-daughter was concluded. The United States Constitution "does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings."  SEC & Exch. Comm'n v. Dresser Indus., Inc., 628 F.2d 1368, 1375 (D.C. Cir. 1980) (citing Baxter v. Palmigiano, 425 U.S. 308 (1976)).  Father cites no authority to the contrary and on appeal, Father provides no specific reason or argument why the termination of parental rights proceeding should have been

stayed until his criminal trial was concluded.  Therefore, we cannot conclude that this argument has merit.

Finally, Father contends that his due process rights were violated when his court-appointed attorney was discharged after he was defaulted for failing to appear at the hearing where DHS was awarded foster custody of J.H.

In In re T.M., 131 Hawaiʻi 419, 436, 319 P.3d 338, 355 (2014), the Hawaiʻi Supreme Court held:  "We direct that upon the filing date of this opinion, trial courts must appoint counsel for indigent parents upon the granting of a petition to DHS for temporary foster custody of their children."

In In re L.I., 149 Hawaiʻi 118, 122, 482 P.3d 1079, 1083 (2021), the supreme court clarified "that In re T.M. mandated that family courts appoint counsel for indigent parents when DHS files a petition asserting custody over a child."  The supreme court further held:

> The failure to timely appoint counsel is structural error which, under State v. Loher, requires vacatur without the necessity of proving harmful error.  140 Hawaiʻi 205, 222, 398 P.3d 794, 811 (2017).  The family court's failure to appoint Mother counsel when DHS filed its petition for family supervision was structural error and cannot be deemed harmless.

Id. at 123, 482 P.3d at 1084 (footnote omitted).  Accordingly, the supreme court vacated the judge in that case and remanded "for further proceedings consistent with this opinion and considering the best interests of the children."  Id.

The supreme reiterated and explained its prior ruling as follows:

In <u>In re T.M.</u>, the petitioner appealed from an order granting temporary foster custody of her children to DHS because she was not appointed counsel until nineteen months after DHS filed its petition for temporary foster custody. 131 Hawaiʻi at 421, 319 P.3d at 340. This court held that the family court's failure to appoint counsel constituted an abuse of discretion. <u>Id.</u> The <u>In re T.M.</u> court explained that, <u>had the petitioner been appointed counsel sooner, she may have been able to comply with the terms of the family plan and provide her child with a safe family home, thus potentially avoiding the subsequent termination of her parental rights.</u> <u>Id.</u> at 433, 319 P.3d at 352. The <u>In re T.M.</u> court concluded by holding that "parents have a constitutional right to counsel under article I, section 5 in parental termination proceedings and that from and after the filing date of this opinion, courts must appoint counsel for indigent parents once DHS files a petition to assert foster custody over a child." <u>Id.</u> at 421, 319 P.3d at 340.

The <u>In re T.M.</u> court repeatedly explained that counsel must be appointed once DHS <u>files</u> a petition to assert foster custody. <u>See</u> <u>id.</u> at 435, 319 P.3d at 354 ("Thus, as soon as DHS files a petition asserting custody over a child, parents' rights are 'substantially affected.' At that point, an attorney is essential to protect an indigent parent's liberty interest in the care, custody and control of his or her children."); <u>id.</u> ("Mandating the appointment of counsel for indigent parents once DHS moves for custody would remove the vagaries of a case-by-case approach.").

<u>Id.</u> at 121-22, 482 P.3d at 1082-83 (some emphasis added; footnotes omitted).

In a recent case, this court similarly observed:

In <u>In re L.I.</u>, the Hawaiʻi Supreme Court held that family courts must appoint counsel for indigent parents even earlier (where applicable), when DHS files a petition for family supervision, because their parental rights are already substantially affected at that point. 149 Hawaiʻi at 122, 482 P.3d at 1083 (citation omitted). **The court further held that the failure to do so was structural error, requiring vacatur without the necessity of proving harmful error**. <u>Id.</u> at 122-23, 482 P.3d at 1083-84. Citing <u>In re T.M.</u>, the court noted that "an attorney is essential to protect an indigent parent's liberty interest in the care, custody and control of his or her children." <u>Id.</u> at 122, 482 P.3d at 1083 (citation and internal quotation marks omitted). **The gravamen of this decision, as well as its predecessors, is that such an attorney is essential throughout proceedings that could result in the termination of parental rights, and we so hold. Representation is so essential that failure to provide counsel to indigent parents facing possible termination of their parental rights is structural error that cannot be deemed harmless error**. <u>See</u> <u>id.</u> at 122-23, 482 P.3d at 1083-84 (citation omitted).

In the Interest of J.M., 150 Hawaiʻi 125, 142, 497 P.3d 140, 157 (App. 2021) (emphasis added).

Although we noted various ways that the father in In re J.M. may have benefitted from continuous representation, we recognized that those potential benefits and consequences related only to whether the discontinued representation was harmful. Id. Our holding nevertheless stated:

> However, based on the Hawaiʻi Supreme Court's decisions concerning the due process afforded to parents facing possible termination of their parental rights, particularly in In re L.I., **we hold that the Family Court's discharge of Father's attorney during the pendency of these proceedings, prior to the Family Court's decision on DHS's Motion to Terminate Parental Rights, violated Father's due process rights and was structural error**. **Accordingly, with respect to Father, the Order Terminating Parental Rights must be vacated without the necessity of proving harmful error**.

Id. at 143, 497 P.3d at 158 (citation omitted; emphasis added).

In this case, Father was appointed counsel when he first appeared for the initial hearing on the Petition for Temporary Foster Custody. However, on August 14, 2019, Father's counsel was discharged when Father (and Mother) failed to appear for the evidentiary hearing on the Petition for Temporary Foster Custody; Mother's counsel was similarly discharged. The petition was granted, but no further service plan could be ordered due to the parents' lack of appearance. When the Family Court discharged counsel for Father and Mother, the court stated that if parents contacted the attorneys again, the attorneys could file ex parte motions to rescind the order of discharge. No ex parte motion was ever filed.

On January 14, 2020, DHS filed a Motion to Terminate Parental Rights and served it on the parents' former counsel; there is no indication that Father or Mother were served. On January 21, 2020, the Family Court held a hearing on, *inter alia*, the Motion to Terminate Parental Rights. Father's former attorney appeared for Father and a "stand-in" lawyer appeared for Mother's former attorney; both parents were present. Stand-in counsel stated that he was not aware of the motion to terminate and Mother had not had a chance to review it. The parents requested a trial on the Motion to Terminate Parental Rights, which was set for April 2, 2020 (but was later rescheduled).

The record does not reflect that any court hearings were held during the five-month period between the August 14, 2019 hearing at which both parents' attorneys were discharged, and the January 21, 2020 hearing.

Nevertheless, the cases discussed above make clear that Father was not required to demonstrate that the discharge of his attorney was harmful, because he was indigent and the termination of his attorney during the pending of these proceedings violated his due process rights and was structural error. In supplemental briefing on this issue, DHS makes cogent arguments that the facts of this case are different than the facts in In re J.M., and that here, Father's ability to make legal arguments was not severely impacted by the lack of legal representation for 159 days. However, the fundamental due process rights and mandate at issue

here are not subject to "the vagaries of a case-by-case approach." See In re L.I., 149 Hawaiʻi at 122, 482 P.3d at 1083. Mother's attorney was similarly discharged, warranting our recognition of plain error. Accordingly, the Order Terminating Parental Rights must be vacated as to both parents and we need not address the other issues raised by Mother.

For these reasons, the Family Court's April 28, 2021 Order Terminating Parental Rights is vacated in its entirety, and this case is remanded for further proceedings.[2]

DATED: Honolulu, Hawaiʻi, January 31, 2022.

On the briefs:

Herbert Y. Hamada,
for Father-Appellant.

Tae Chin Kim,
for Cross-Appellant/Mother.

Abigail S. Dunn Apana,
Julio C. Herrera,
Patrick A. Pascual,
Regina Anne M. Shimada,
Deputy Attorneys General,
for Petitioner-Appellee
 The Department of Human Services.

Michelle K. Moorhead,
(Legal Aid Society of Hawaiʻi)
Guardian Ad Litem.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

---

[2] As noted in In re J.M., this ruling does not constitute the beginning of a new "two-year period" to address the issues that led to J.H.'s removal from the parents' care and DHS's request to terminate their parental rights. 150 Hawaii at 143 n.10, 497 P.3d at 158 n.10. However, a new hearing must be held concerning the best interests of J.H., consistent with this Summary Disposition Order and, *inter alia,* the authorities cited herein. See, e.g., In re LI, 149 Hawaiʻi at 123, 482 P.3d at 1084.